## Case No. 8,761.

### McDONALD v. MAGRUDER.

[3 Cranch, C. C. 298.] [1]

Circuit Court, District of Columbia. May Term, 1828.

CONTRIBUTION—ACCOMMODATION PAPER—SURETIES.

The indorsers of accommodation paper are to be considered as joint sureties, and liable to contribution.

Assumpsit by the last indorser against his immediate indorser of S. Turner's note, dated 15th October, 1823, for $150 at 60 days, payable to the defendant [George B. Magruder] at the Bank of the Metropolis, where it was discounted for the accommodation of Turner. The plaintiff [John G. McDonald], being the last indorser, put his initials to these words, at one corner of the note,"Credit the drawer." The note not having been paid by the maker, was taken up by the plaintiff, who brought this suit against the first indorser. The plaintiff and the maker of the note were both clerks in the office of the secretary of the senate. The cause was tried at December term, 1825.

The counsel for the defendant contended that, as no consideration passed between these indorsers, the plaintiff could only recover upon the principle that joint sureties were liable to contribution. That the words "credit the drawer" were evidence that the indorsers were to be considered as joint sureties.

Mr. Wallach, for plaintiff, prayed the court to instruct the jury that these words were not evidence that the plaintiff and defendant had jointly agreed to become indorsers for the accommodation of Turner; which instruction THE COURT (MORSELL, Circuit Judge, absent) refused to give, and the jury found a verdict for the plaintiff for only half the amount of the note.

Mr. Wallach moved for a new trial, on the ground that the court erred in the refusal of the instruction.

But THE COURT (MORSELL, Circuit Judge, absent) refused the new trial. They thought the memorandum was evidence that the plaintiff never paid the defendant any thing for the note, and therefore the plaintiff could recover nothing from the defendant unless upon the ground that the defendant had agreed to become joint surety with the plaintiff; and that the jury did right in finding a verdict for only half of the amount of the note.

But see Magruder v. McDonald [Case No. 8,965].

McDONALD (MAGRUDER v.). See Case No. 8,965.

McDONALD (MANDEVILLE v.). See Case No. 9,013.

[1] [Reported by Hon. William Cranch, Chief Judge.]

McDONALD v. The MONADNOCK. See Case No. 9,704.

## Case No. 8,762.

### McDONALD v. MOORE.

[Reversing Case No. 8,763, so far as that decree directed the payment of the judgment of M., T. & Co., and the costs of the sheriff on the execution, and affirming it in all other respects. Nowhere reported; opinion not now accessible.]

## Case No. 8,763.

### MACDONALD v. MOORE et al.

[8 Ben. 579; 1 Abb. N. C. 53; 23 Int. Rev. Rec. 25; 3 N. Y. Wkly. Dig. 461; 15 N. B. R. 26; 24 Pittsb. Leg. J. 83.] [1]

District Court, S. D. New York. Dec. 9, 1876. [2]

VOID CONVEYANCE—GENERAL ASSIGNMENT—LIEN—LEVY—COSTS.

1. On December 28th, 1875, S., being insolvent, made a general assignment of his property to M., in trust to pay creditors without preference. M. took possession of the property, which consisted of a stock of goods. On January 4th, 1876, the firm of M. T. & Co. recovered a judgment in a state court against S., and issued execution to the sheriff, whose deputy, on that day, went to the store where the stock of goods was, and found it locked so that he could not effect an entrance, but, having obtained a ladder, he got up and looked through an open window into the store and saw that there were goods there, and made a memorandum on the back of the execution that he had levied on the stock and fixtures in the store. On January 7th, the sheriff, having received a bond of indemnity, broke into the store and took possession of the goods. On January 5th a petition in bankruptcy was filed against S., on which he was adjudged a bankrupt on the 17th, and, an assignee in bankruptcy having been appointed, a bill in equity was filed by him against S. and M. and M. T. & Co. and the sheriff, to recover the property or its proceeds. In that suit a receiver was appointed, to whom the sheriff delivered the property and who sold it and held the proceeds subject to the decree of the court. M., in his answer, consented to relinquish his trust on being paid his disbursements and expenses. M. T. & Co. insisted upon their right to have the property applied on their execution: *Held*, that the assignment by S. to M. was made when S. was insolvent and had the necessary result of preventing him from coming to any assignee in bankruptcy of S. who should be appointed, and must be held to have been made by S. with that view.

[Cited in Platt v. Preston, Case No. 11,219.]

2. M. had reasonable cause to believe that S. was insolvent and must be held to have known that S. made the assignment with such view. The assignment, therefore, must be set aside.

[Cited in Wehl v. Wald, 3 Fed. 93.]

3. The assignment, being declared void from the time when it was made, could not prevent M. T. & Co. from acquiring rights against the property of S. by the proceedings which they took.

4. The judgment and execution of M. T. & Co. were valid, and the acts of the sheriff under the execution constituted an actual levy on the goods,

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission. 24 Pittsb. Leg. J. 83, contains only a partial report.]

[2] [Reversed in part and affirmed in part by the circuit court. Case unreported.]

the lien of which would have precedence of the claim of the plaintiff.

[Cited in Re Beisenthal, Case No. 1,236. Cited, but not followed, in Re Steele, Id. 13,-345; Re Walker, Id. 17,063.]

5. The sheriff must be paid his poundage, levy fees and keeper's fees; that M. must be paid his disbursements, made before the sheriff took the goods, and $300 to cover his own services and those of his counsel; the costs of M. T. & Co. and of the plaintiff must be paid out of the fund; the amount of the judgment of M. T. & Co., with interest, must be paid to them; and the remainder must be paid to the plaintiff.

[Cited in Re Kurth, Case No. 7,948; Wald v. Wehl, 6 Fed. 169.]

[This was an action by Robert Macdonald, assignee in bankruptcy of David Solinger, against William T. Moore and others.]

Dunne & Carr, for plaintiff.
A. Blumenstel, for Mayer.
J. S. Smith, for the sheriff.
J. H. Hull, for Moore, Tingue & Co.

BLATCHFORD, District Judge. On the 28th of December, 1875, David Solinger, being insolvent, made a general assignment, under the laws of the state of New York, of all his property, to the defendant Mayer, in trust to pay his creditors, share and share alike. Mayer accepted the trust, and took possession of the property on the said day, and complied with the statute as to filing a bond and an inventory. The property consisted of a stock of dry goods in a retail store in the city of New York. On the 4th of January, 1876, the defendants Moore, Tingue & Co. recovered a judgment in a state court against Solinger for $1,508.38, and on the same day an execution thereon was issued to the sheriff, who is a defendant in this suit, and placed in his hands. On the 5th of January, 1876, a petition in bankruptcy was filed against Solinger, whereon he was adjudged a bankrupt on the 17th of January. The plaintiff was chosen assignee in bankruptcy, and an assignment was made to him by the register on the 16th of February following. The plaintiff in his bill claims that he has a title to the property which was embraced in the assignment to Mayer, superior to the claims of Mayer and of Moore, Tingue & Co. and of the sheriff; that the assignment to Mayer was made in fraud of the bankruptcy act; and that the property or its proceeds ought to go to the plaintiff, as assignee in bankruptcy, free and clear of the claims of all the defendants.

Mayer, in his answer, expresses his willingness to relinquish his trust, in favor of the plaintiff, on being repaid his disbursements for counsel fees and other expenses in administering his trust, and his commissions thereunder. Moore, Tingue & Co., in their answer, insist upon their right to have the property applied on their execution as against Mayer and the plaintiff. The sheriff, in his answer, insists on his claim to the property under a lien acquired by virtue of a levy thereon under said execution.

The assignment to Mayer must be held to have been invalid as against the rights of the plaintiff under the bankruptcy act [of 1867 (14 Stat. 517)], although it was an assignment in trust for creditors without preference. It was made when Solinger was insolvent, and it had the necessary result of preventing the property from coming to any assignee in bankruptcy of Solinger who should be appointed, and of preventing such property from being distributed under the bankruptcy act in any proceedings in bankruptcy instituted against Solinger, and, therefore, it must be held to have been made by Solinger with such view, inasmuch as it was made by his affirmative action and could not have been made without such action. Mayer had reasonable cause to believe Solinger to be insolvent, and must be held to have known that Solinger made the assignment with such view, because he must be held to the knowledge that the making of the assignment would have the necessary result above mentioned. The assignment was made within three months before the filing of the petition in bankruptcy against Solinger. The question whether a general assignment in trust for creditors, without preferences, under a state law, is void under the bankruptcy act, is elaborately discussed by Judge Emmons in the recent case of Globe Ins. Co. v. Cleveland Ins. Co. [Case No. 5,486], in the circuit court of the United States for the Northern district of Ohio, and the decision is that it is void. That has always been the law in this circuit.

The assignment to Mayer being set aside, the question arises as to whether the property is subject to a lien under the execution in favor of Moore, Tingue & Co., as against the assignee in bankruptcy. There is nothing to impeach the validity of the judgment and execution. Under the law as settled in the case of Wilson v. City Bank, 17 Wall. [84 U. S.] 473, Vanderhoof v. City Bank of St. Paul [Case No. 16,842],[3] it is not to be inferred from the mere fact that a debtor remains passive and suffers a judgment to be obtained against him and an execution thereon to be levied on his property, that he has any view therein to thereby give a preference to the creditor obtaining the judgment and issuing the execution and causing the property to be taken thereunder. If there be nothing more than such passive non-resistance by the debtor, there is nothing inhibited by the bankruptcy act, however much the creditor may have intended to secure a preference over other creditors in the case of a debtor known to him to be insolvent, and however successful he may have been in securing such preference.

On the same day on which the execution was delivered to the sheriff, the 4th of January, a deputy of the sheriff went with the execution to the store of Solinger, in which

---

[3] [From 15 N. B. R. 26.]

was the property which had been assigned to Mayer, and of which Mayer then had possession, and, finding it shut up and locked, endeavored in vain to effect an entrance into it. He then obtained a ladder, and, by the use of that, looked through an open fan window over the door, into the store, there being no person inside, and saw that there were goods there, and then made a memorandum on the back of the execution, in pencil, in these words: "Jan'y 4th, levied upon stock and fixtures at 328 Bleecker St.," that being the store in question. From the 4th of January to the 7th, some one acting for the sheriff watched the store, on the outside, to see that no goods were removed, and, on the 7th, the sheriff, having received a bond of indemnity from the judgment creditors, broke into the store and took possession of the goods.

It is contended, for the plaintiff, that no lien could be or was obtained by Moore, Tingue & Co., under their execution, because the goods had ceased to be the property of Solinger, and the title to them, subject to be defeated under the bankruptcy act, had passed to Mayer, by a valid assignment, before the execution was issued, and that then the proceedings in bankruptcy intervened, so that the execution never became operative against the goods, and that, when the assignment is set aside, the goods must pass to the plaintiff free from any lien or claim under the execution. This view is not sound. When the assignment is set aside, it becomes void from the time it was made, as against all persons who, after the time it was made, took steps to acquire rights against the property embraced in it, as still the property of Solinger, and who, but for the obtainment of the assignment, would have secured and enjoyed such rights free from any obstruction. Such rights arrange themselves in order according to their priorities in point of time. This principle applies equally to rights under the bankruptcy act and to rights under the state laws. Nor is this principle inconsistent with the other principle, that, if the assignment is valid except as made invalid by some provision of the bankruptcy act, all acts done under it in good faith and without notice that proceedings in bankruptcy have been taken, are to be upheld.

As between Moore, Tingue & Co. and Solinger, the execution of the former bound the goods of the latter from the time the execution was placed in the hands of the sheriff. The assignee in bankruptcy acquired no rights, in that respect, as against Moore, Tingue & Co., which Solinger did not possess. The assignee in bankruptcy does not occupy the position of a bona fide purchaser. But, even if he did, I think what was done by the sheriff's deputy on the 4th of January, in respect of the goods, constituted an actual levy on them. As the rights of the assignee in bankruptcy relate back only to the 5th of January, when the petition in bankruptcy

was filed, it follows that the goods were subject to the lien of the execution when that petition was filed, and that such lien has precedence of the claim of the plaintiff.

After this suit was brought, a receiver of the goods in question was appointed in it by this court, and the goods were delivered by the sheriff to the receiver, and the receiver, by order of this court, sold them at public auction. The net proceeds, $3,783.93, are now in this court to the credit of this suit.

The sheriff claims to be paid the sum of $246.66 for poundage, levy fees and keeper's fees. This amount does not seem to be objected to by any of the parties, but, if it is, it may be further inquired into. Otherwise it will be allowed, and the sheriff will be allowed his costs of this suit, to be paid out of the fund.

Mayer was in possession of the goods for ten days. Then the sheriff took them from him. Mayer will be allowed the disbursements he made before the sheriff took the goods, $147.50, and the sum of $300 to cover his own services and those of his counsel. As between Mayer and the plaintiff, no costs of this suit are allowed to either as against the other.

The costs of Moore, Tingue & Co. in this suit will be paid out of the fund, and so will the costs of the plaintiff. The amount of the judgment of Moore, Tingue & Co., with interest, will be paid, and the remainder of the fund, after the above-named payments are made, will be paid to the plaintiff, to be held and administered by him as assignee in bankruptcy.

NOTE. This decision was reversed by the circuit court, on appeal, July 1st, 1878, so far as it directed the payment of the judgment of M. T. & Co. and the costs of the sheriff on the execution, and was affirmed in all other respects.

McDONALD (NORTH v.). See Case No. 10,-312.

## Case No. 8,764.

### McDONALD v. ORVIS.

[5 Biss. 183.] [1]

Circuit Court, N. D. Illinois.   Oct., 1870.

PLEADING—DEMURRER — WRITTEN INSTRUMENT— CHANGE BY ORAL TESTIMONY—UNCERTAINTY —GENERAL ISSUE PLEADED.

1. A plea that the written contract set forth in the declaration is not the contract made by the parties, but is a fraud upon the defendant, is bad on demurrer; it is an attempt to change a written contract by oral testimony, and is also bad for uncertainty.

2. Where the general issue has been pleaded, a demurrer to a special plea cannot be carried back to the declaration. Having tendered an issue of fact, the defendant cannot claim the benefit of a demurrer.

Demurrer by plaintiff [Angus McDonald] to the last plea filed by the defendant [Frank-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]