(32 App. Div. 489.)

LAWRENCE v. CONGREGATIONAL CHURCH OF GREENFIELD, LONG ISLAND.

(Supreme Court, Appellate Division, Second Department. July 23, 1898.)

MECHANIC'S LIEN—ENFORCEMENT BY ASSIGNEE.

The owner of a building, who still owes to the building contractor a portion of the agreed cost of its construction, for which a mechanic's lien has been filed, and a suit to foreclose the same commenced, cannot defeat the right of a subsequent assignee thereof from the contractor to prosecute the action upon the ground that he gave no notice of the assignment, and that after the assignment was made the original parties had agreed that, while the action to foreclose the lien should not be prejudiced, it should not be further prosecuted unless the owner should violate his part of the later agreement.

Appeal from special term.

Action by James V. Lawrence, sole surviving partner of the firm of Lawrence Bros., against the Congregational Church of Greenfield, Long Island. From a judgment in favor of plaintiffs, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

F. E. Dana, for appellant.

Ralph Earl Prime, Jr., for respondent.

WOODWARD, J. On the 15th day of July, 1891, Andrew Mortenson entered into a contract in writing with the defendant for the construction of a church edifice at Parkville, Long Island, by which he agreed on or before November 15, 1891, to well and sufficiently finish the new building known as the "New Congregational Church of Parkville, L. I.," agreeably to the drawings and specifications made by L. B. Valk & Son, architects, in a good and workmanlike and substantial manner, to the satisfaction and under the direction of the architects, for the sum of $6,500. Certain other work, aggregating about $800, was omitted from the contract, but was subsequently ordered, making the whole amount $7,300. The work was not completed within the time specified in the contract, and some time in January, 1892, the general work upon the church was suspended by mutual agreement, owing to the fact that it was feared that the local authorities were going to extend a certain street through the church grounds in such a manner as to destroy the use of the edifice. Subsequently, and in May, 1892, Mortenson filed a mechanic's lien against the premises for $2,060.94, which is now conceded to have been an error in the amount claimed, due to a mistake in mathematics, growing out of the hurry in which it was made up. On the 15th day of December, 1894, Mortenson assigned to William F. Lawrence and James V. Lawrence, of Yonkers, N. Y.—

"A certain claim and cause of action belonging to me, amounting to the sum of seventeen hundred and fifty dollars, against the Parkville Congregational Church, of Parkville, Kings County, N. Y., and also a certain mechanic's lien against said church, * * * together with my claim and cause of action thereon, and all sums of money due and owing to me thereon, as collateral security for the payment of all sums of money owing by me to said Lawrence

Bros.; hereby giving unto said Lawrence Bros. full authority, in my name and place and stead, to collect and receive the same, and to do and perform all acts necessary in the premises. Subject to the claim thereon of Brunnemer; also, subject to a prior assignment thereof as collateral security for an indebtedness of $675 to one Nils Johnson, of Brooklyn, N. Y."

Prior to this assignment, Mortenson had commenced an action to foreclose his mechanic's lien. This was on the 9th day of May, 1893. On the 7th of March, 1895, Mortenson and the defendant in the action entered into a new contract for the completion of the church. In this contract it was stipulated that the amount due on the original contract was $1,361, with $100.11 costs, making $1,461.11; and Mortenson agreed to go on and finish the church for the sum of $2,248.11, including what was due upon the original contract, assigned as collateral security to Lawrence Bros. In this contract it was—

"Agreed that nothing herein contained shall in any way release, discharge, or in any way be construed to relinquish, any claim under said notice of lien heretofore filed as above mentioned, or be in any manner construed to dismiss or discontinue or waive any rights of the parties to the action heretofore commenced for the foreclosure of said lien: provided, however, that the payments made under this agreement shall be first applied towards the payment of the costs of said action to foreclose said lien, and the satisfaction of said lien, and proceedings for the amount aforesaid."

It was further agreed:

"That no further proceedings shall be taken in said action to enforce the payment of the amount due upon said lien until after default made by the party of the first part in the covenants, agreements, and conditions in this agreement set forth."

Mortenson, after completing enough of the work so that he was entitled to the payment of about $800, which payments were duly made, failed; and on the 13th day of November, 1896, an order of the court was made substituting the present plaintiff, who now seeks to have the mechanic's lien foreclosed; and the trial court has found in his favor.

The only contention of the defendant which is worthy of serious consideration (the others having been disposed of, in so far as the defendant is concerned, by the stipulations in the second contract) is that the "plaintiffs gave no notice to the defendants of the assignment to them of said lien or cause of action, and are bound by the subsequent acts and dealings between the defendants and Mortenson relative thereto." This is, in effect, asking that a court of equity shall decree that a party who has come into possession of a valid cause of action, where the defendant concedes that the obligation is owing, shall be denied the right to recover because a third person, supposed to have some control over the cause of action, has agreed that it shall not be prosecuted except upon the happening of a contingency which is now practically impossible. We are of the opinion that this is not the law of this case, and that the judgment of the trial court should be affirmed. "It seems settled by authority, however," say the court in the case of Trust Co. v. Weeks, 15 App. Div., at page 601, 44 N. Y. Supp. 831, "that no notice is necessary to perfect the rights of the assignee of a chose in action in a case of this kind. Such is the effect of the decision in Beckwith v. Bank, 9 N. Y. 211, where

it was held that section 112 of the old Code of Procedure (for which subdivision 1 of section 502, Code Civ. Proc., is a substitute) was not intended to change the subsequent rights of parties, but only to introduce such alterations in the mode of protecting them as were rendered necessary by the requirement that in most cases the real party in interest should be the plaintiff." It was decided in this state, in the case of Muir v. Schenck, 3 Hill, 228, and reasserted in Richardson v. Ainsworth, 20 How. Prac. 521, that a complete title to a chose in action, consisting of a debt due from a third person, passes by its assignment without notice to the debtor. This doctrine was plainly asserted in the case of Beckwith v. Bank, 9 N. Y. 211. In that case a business concern made a general assignment to the plaintiff. At the date of the assignment the firm had on deposit in the Union Bank the sum of $3,600. The bank was at the same time the holder of a bill of exchange for a larger amount, bearing the indorsement of the insolvent firm. The bill was dishonored, and the bank charged it up to the account of the firm after they had made the assignment. Commenting on this state of facts, the court say:

"Nor had the bank any lien upon the deposits of the Hunters which would have prevented their drawing out the whole balance of cash to their credit on the 24th of August. This right passed to the plaintiff by the assignment. No notice was necessary to perfect that right in the assignee, except only that in default of notice the bank might have so dealt as by its subsequent acts to have affected his rights."

Notice to the debtor is necessary only that he may not so dispose of the funds out of which an obligation is to be paid as to affect the rights of the assignee, and it is of no consequence in the case at bar, because it does not appear that there has been any action which in any manner relieves the defendant from the duty or obligation or ability to pay the amount of the claim. Had the defendant paid over to Mortenson the amount of the claim, without knowing that it had been assigned, equity might find a way to relieve the defendant; but there is no pretense that the claim has ever been paid, and this court is asked to defeat a recovery because of certain alleged damages growing out of a contract with which this plaintiff has had no connection, so far as appears from the evidence, and because Mortenson agreed that no further proceedings should be instituted to collect this claim unless the defendant should be in default for some of the payments due under this new contract. The plaintiff was under no obligations to inform the defendant of the assignment. The legal title passed completely by the assignment, and the plaintiff, by neglecting to give notice of the change of ownership, simply took the chances of the defendant so dealing with the funds as to affect his rights. This could be done only by making payment of the amount involved to some person other than the owner of the claim, and there is no pretext that anything of the kind has occurred. The defendant concedes that it owed Mortenson $1,461.11, including the costs in the foreclosure proceeding, and it was specially agreed in the second contract that nothing therein contained was in any manner to affect the claim under the mechanic's lien. That stood separate and distinct from the new contract, and, should it be conceded that the defendant has suf-

fered the damages claimed by reason of the breach of the second contract, we know of no rule of law by which the owners of the mechanic's lien could be held responsible for such a loss. The fact that the defendant did not know that Mortenson had disposed of his rights in the mechanic's lien does not give it the right to repudiate a just debt. In the case of Crouch v. Muller, 141 N. Y. 495, 36 N. E. 394, relied upon by the defendant to sustain its contention that notice was necessary, the contractor gave an order on the owner of the building which was being constructed for $1,000. This order was presented to the defendant, who was asked to sign it. This he refused to do, not knowing its nature. On the trial it was held that this was not a notice of the equitable assignment, and that the defendant, having paid all but $153.90 of the contract price, could not be held responsible· for more. The court say:

"The order drawn by the contractor upon the defendant, by its terms, and under the circumstances, operated as an equitable assignment of the sum expected to become due upon the owner's contract with the builder. Brill v. Tuttle, 81 N. Y. 457. There would be no doubt of plaintiff's right to recover the whole of such sum if due notice of the assignment had been given to the drawee; but the trial court and the general term have concurred in the conclusion that no such notice was given, and have so held, as matter of law, upon the evidence."

This case simply decides that the drawee, having no notice of the assignment, cannot be held responsible to the plaintiff for a sum in excess of the amount due on the contract at the time of the commencement of the action, but it is in no wise an authority for the proposition that the defendant is absolved from the duty of paying that which is due to the holder of the assignment. On the contrary, it was found in this case that the defendant was liable for so much of the order or assignment as was in his possession, and he was ordered to pay this to the plaintiff. "There can be no doubt as to the rule," say the court in the case of Brill v. Tuttle, supra, "that when, for a valuable consideration from the payee, an order is drawn upon a third party, and made payable out of a particular fund then due or to become due from him to the drawer, the delivery of the order to the payee operates as an assignment, pro tanto, of the fund; and the drawee is bound, after notice of such assignment, to apply the fund, as it accrues, to the payment of the order, and to no other purpose, and the payee may, by action, compel such application." Finch v. Parker, 49 N. Y. 1, also quoted to sustain the contention of the defendant, was an action for the specific performance of a contract. The court, in discussing the case, say that "the plaintiff not having given notice to the defendant of the assignment of the contract by Young to him, and the defendant having no knowledge thereof, plaintiff is bound by the subsequent acts and dealings between the defendant and Young in relation thereto"; but it adds, "The judge finds, in effect, that no such contract as is alleged in the complaint was ever made between Young and the defendant;" and the language of the court is to be understood, not as asserting a general proposition, but as declaring the law in respect to the particular facts of that case, and as bearing upon the plaintiff's right to the specific performance of a contract which had in fact no existence outside of the pleadings.

We are unable to find any authority which sustains the theory of the defense, that it is absolved from the payment of its just debts because it has not been notified of the ownership of the claim.   It certainly has not paid this debt, it has established no equities as against the plaintiff in this action, and we are forced to conclude that the judgment of the trial court should be affirmed.

Judgment affirmed, with costs.   All concur.