(74 App. Div. 89.)

### PEARSALL v. NASSAU NAT. BANK et al.

(Supreme Court, Appellate Division, Second Department. June 6, 1902.)

1. BANKRUPTCY—PROPERTY PASSING TO TRUSTEE—BANK DEPOSITS—LIEN OF BANK.

Where a depositor in a bank made an assignment for creditors before his notes held by the bank matured, and was adjudged a bankrupt in proceedings instituted after the notes matured, the title to his deposit passed to the assignee, and thence to the trustee, and the bank could not apply it on the notes.

2. SAME—EFFECT OF BANKRUPTCY ACT.

The rule that a bank has no lien on the deposit of a customer on account of his notes held by it until they mature, is not changed, except in the bankruptcy proceedings and in the incidental proof and allowance of claims, by the provision of Bankr. Act, § 68, that mutual debts between a creditor and a bankrupt may be set off, and section 63, defining the debts which may be proved against a bankrupt's estate.

3. SAME—PREFERENCES—INSOLVENCY—BELIEF OF CREDITOR.

Where a real estate speculator borrowed money of his wife with the understanding that he would convey to her property of equal value, and soon after, in making a trade of real estate, caused the property he was to receive, and which was of such value, to be conveyed directly to her, neither of them at that time believing that he was insolvent, and she having no reasonable cause to so believe, such conveyance to her was not a voidable preference within Bankr. Act, § 60, though he made an assignment 25 days thereafter, and was adjudged a bankrupt in proceedings commenced a few days later.

4. SAME—BANKRUPT AS AGENT FOR CREDITOR.

The fact that the conveyance of the property was made directly to the wife by direction of her husband did not constitute him her agent, so as to bind her with notice of what he knew of his financial condition, and make the transaction a preference, since he merely took that method of paying his debt, instead of first taking a conveyance to himself, and then conveying to her.

Appeal from special term, Kings county.

Action by James Z. Pearsall, as trustee in bankruptcy of Walter S. Johnson, against the Nassau National Bank and others. From a judgment for plaintiff, defendant bank appeals. Reversed.

This action is brought by the trustee in bankruptcy of Mr. Johnson to recover $680 and $1,424 from a bank. Mr. Johnson and his wife were separate depositors therein. The bank had discounted for Mr. Johnson, and held, two promissory notes made by Mrs. Johnson to her own order for the accommodation of her husband, indorsed by her and by her husband, for $1,600 and $500, which fell due on May 29 and June 16, 1900, respectively. On May 28, 1900, Mr. Johnson's balance was $680. On that day he executed and delivered a general assignment to Mr. Cooke, which was filed by the assignee on May 29th. When the note for $1,600 fell due, it went to protest. Thereupon the bank charged it against the account of Mr. Johnson, applied thereto his said balance of $680, and then charged him with an overdraft of $920. By proceedings instituted June 5, 1900, Mr. Johnson was adjudged a bankrupt, and the plaintiff was appointed his trustee on August 3, 1900. On June 16th, the note for $500 was presented for payment, but was not paid. Mrs. Johnson had received in April, 1900, about $12,000 on an insurance policy, which sum she lent to her husband. On May 3, 1900, Mr. Johnson, by an exchange, had conveyed certain realty, of which he was the owner, to Mr. Dickinson, and Mr. Dickinson had conveyed to Mrs. Johnson premises in Forty-Seventh street, which were subsequently mortgaged (on May 5th) for $1,800. This $1,800 was used by Mr. Johnson in his business. On June 22, 1900, Mrs. Johnson conveyed the Forty-Seventh street property

to Mr. McDonald, cashier of the defendant, for $1,200, which, with $300, was deposited by her in the defendant bank. Thereupon Mrs. Johnson delivered to Mr. McDonald two checks dated that day for $504 and $920, which the bank paid into Mr. Johnson's account. Mr. Johnson, at the request of Mr. McDonald, made his own check, whereby he directed the bank to pay out of his account the sum of $1,601 to the order of the "Note Nassau National Bank," and thereupon the notes were paid out of Mr. Johnson's account, were delivered up, and were destroyed. The special term decided that on May 28, 1900, the bank was indebted to Mr. Johnson in the sum of $680; that upon the delivery of the assignment to Mr. Cooke he became vested with the title thereto; that when Mr. Johnson was adjudged a bankrupt the title to the deposit immediately vested in the plaintiff as trustee; that the conveyance to Mrs. Johnson of the Forty-Seventh street property was an unlawful preference, which was null and void; that the trustee was entitled to recover the proceeds of the sale to Mr. McDonald, as the payment of the notes out of the proceeds was an unlawful preference; and gave judgment for the plaintiff, from which judgment the defendant bank appeals.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Lemuel H. Arnold, for appellant.

E. G. Bullard, for respondent.

JENKS, J. The bank had no lien upon the deposits of Mr. Johnson for the payment of the note before the maturity thereof, for the reasons stated in Jordan v. Bank, 74 N. Y. 467, 30 Am. Rep. 319, that such right does not arise from mere possession, but from contract or operation of law, and where there is no contract the law does not imply one until after the note falls due, remains unpaid, and no other rights have intervened. Before the note fell due, Mr. Johnson had made and delivered the assignment. As Mr. Johnson had the right to draw out his balance at any time before the note fell due, inasmuch as the bank then had no lien upon it, that right passed to the assignee previous to the maturity of the note, so that when the bank attempted to enforce the lien it dealt not with its debt to the depositor, but with his assignee. See, too, Coffin v. McLean, 80 N. Y. 560, 563. In Beckwith v. Bank, 9 N. Y. 211, an insolvent firm with money on deposit in a bank made a general assignment. Thereafter, but before notice of the assignment to the bank, a bill against the firm, held by the bank, larger than the deposit, fell due, and was charged up by the bank against the account. The court held that the bank had no lien which would have prevented the assignors from drawing out their deposit before the maturity of the bill; that the right passed to the assignees; and that no notice was necessary to perfect that right, except that only in default of notice the bank might have so dealt by its subsequent acts as to have affected his rights. See, too, Lawrence v. Congregational Church, 32 App. Div. 489, 53 N. Y. Supp. 145, affirmed 164 N. Y. 115, 58 N. E. 24. In Coates v. Bank, 91 N. Y. 20, 27, it is said that the only object of notice is to guard the debtor against dealings with the assignor in the belief that he still owned the debt. The learned counsel for the appellant ·contends that the plaintiff, as trustee in bankruptcy, took the property as though no assignment had been made, and subject to all lawful liens upon it, for

the reason that the bankruptcy proceedings avoided the assignment, and that the title of the assignee is as of the date when the adjudication of bankruptcy was made; and cites McDonald v. Moore, 1 Abb. N. C. 53, Fed. Cas. No. 8,763, decided by Blatchford, J., in the United States district court, Southern district of New York. It is to be noted that in Thrasher v. Bentley, 59 N. Y. 649, more fully reported in 1 Abb. N. C., at page 39, the court of appeals, where the point was made that a general assignment was void under the bankrupt act, and that the assignee took no title, said:

"We do not discover in the facts of this case anything which shows that this assignment is in hostility to the bankrupt act, and therefore void. There is no preference created by it in favor of any creditor. On the contrary, it provides in terms for the payment of all his creditors in full; and, if that may not be, then ratably, and in proportion. There is no intimation that the debtor (Syme) has ever been proceeded against or taken proceedings in the bankrupt court. We do not find in the bankrupt act any provision which makes an assignment of such kind by a debtor not made a bankrupt an instrument void per se. On the contrary, there are authorities that such an assignment is not void. It was so held in Sedgwick v. Place, 1 N. B. R. 204, Fed. Cas. No. 12,622, by Nelson, J.; and on Hawkins' Appeal, in the supreme court of Connecticut. See 34 Conn. 548."

See, too, Railroad Co. v. Collins, 57 N. Y. 641; Haas v. O'Brien, 66 N. Y. 597; Wilson v. Nelson, 183 U. S. 191, 22 Sup. Ct. 74, 46 L. Ed. 147.

Mr. Collier, in his work on Bankruptcy, says that such an assignment is voidable, and not void, and is good except in proceedings instituted in bankruptcy. Pages 41, 42, citing many authorities. Moreover, the present act differs from the act as it existed when McDonald v. Moore, supra, was decided, in that it provides that all property assigned within four months prior to the filing of the petition, with intent to hinder, delay, and defraud creditors, shall be and remain a part of the assets and estate of the bankrupt, and shall pass to the trustee, whose duty it shall be to recover and to reclaim the same by legal proceedings or otherwise for the benefit of the creditors. The assignment in the case at bar was not set aside, but was invalidated by the bankruptcy proceedings. I think, then, that before the defendant had any right to exercise a lien, the title to the deposit vested in the assignee, and that when the assignment was invalidated by the bankruptcy proceedings the title of the assignee passed to the trustee, and that there was no interval after the assignee acquired title, and before the trustee took title, during which the title was in Mr. Johnson, so that at or upon the maturity of the note the bank could enforce a lien thereupon as against his property. The learned counsel for the appellant contends that under the bankruptcy act the right of set-off existed from the time the notes were discounted; citing sections 68 and 63 of the act. He points out that section 68 (to quote his language) "provides that in all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated, and one debt shall be set off against the other, and the balance only shall be allowed or paid"; and that section 63 (also quoting the counsel's language) provides that "the 'debts' of a bankrupt which may

be proved and allowed against his estate are a fixed liability as evidenced by a judgment or an instrument in writing absolutely owing at the time of the filing of the petition against him, whether then payable or not," and hence he contends that the bank had the right of set-off, even if the notes had not fallen due before the bankruptcy proceedings were commenced. I think that those provisions must be interpreted as applicable to the proceedings in bankruptcy and to the incidental proof and allowance of claims, but not as intended to change the principles of set-off in actions. Munger v. Bank, 85 N. Y. 580, 588, citing Sawyer v. Hoag, 17 Wall. 610, 21 L. Ed. 731. When the plaintiff was declared a bankrupt, there was no mutual debt or mutual credit as between him and the bank, for the reason that he had, before even the filing of the petition, parted with his title to the assignee for the benefit of his creditors, and the claim, in effect, was that of the creditors as against the bank. In order to render a preference voidable within section 60 of the bankruptcy law, it is necessary, inter alia, to establish that there was reasonable cause on the part of a creditor to believe that a preference was intended. Sebring v. Wellington, 63 App. Div. 498, 71 N. Y. Supp. 788. In Re Eggert, 43 C. C. A. 1, 102 Fed. 735, 4 Am. Bankr. R. 449, Jenkins, J., after a review of many authorities, pertinently says:

"The creditor is not to be charged with knowledge of his debtor's financial condition from mere nonpayment of his debt, or from circumstances which give rise to mere suspicion in his mind of possible insolvency. It is not essential that the creditor should have actual knowledge of or belief in his debtor's insolvency, but that he should have reasonable cause to believe his debtor to be insolvent. If facts and circumstances with respect to the debtor's financial condition are brought home to him, such as would put an ordinarily prudent man upon inquiry, the creditor is chargeable with knowledge of the facts which such inquiry should reasonably be expected to disclose."

Mr. Collier, in his work on Bankruptcy, says:

"The present statute does not make any preferences voidable unless the transferee had reasonable cause at the time of the transfer to believe that a preference was intended. It is to be noted that the reasonable cause is cause to believe, not that the transferror is insolvent, but cause to believe that a preference was intended. This would, however, seem to require reasonable cause to believe that insolvency existed, and also reasonable cause to believe there was a preferential intent. The former act, as amended (Rev. St. §§ 5128, 5129), required that the transferee should have reasonable cause to believe the transferror insolvent, and that he should also know that the transfer was made as a preference or to defeat the object of the act. Now no positive knowledge of any fact is required, but simply a reasonable cause to believe that a preference was intended."

It is established that the wife had about $12,000 of her own money, collected in April, 1900, upon a policy of fire insurance. It is established that she gave it or loaned it to her husband, so there existed at that time the relation of debtor and creditor. Thereafter, and on May 3, 1900, the husband caused to be conveyed to her by third parties certain premises in Cumberland street and in Forty-Seventh street, for which he had exchanged some of his realty. The husband, who was called by the plaintiff, testified that he had agreed in April to give to his wife that or some other property in payment or as se--

curity for the $12,000, and that as soon as he "got this piece" he suggested that he would give it to her, and that he did thereafter give to her the Cumberland street property and this property for the $12,000. Mrs. Johnson·testified .that she wished something for the money; that she wished real estate; and that Mr. Johnson gave to her the Cumberland street and the Forty-Seventh street property therefor. Mr. Johnson testified without contradiction that the value of the Cumberland street property and of the Forty-Seventh street property was about $12,000. Mr. Johnson was engaged in the business of real estate. His property was in real estate incumbered with mortgages. He testified that on May 3d he was "solvent, provided my real estate was not. * * * If not in actual cash, I think I was able to pay my obligations as they matured. I did not have cash enough in the bank to pay everything. If everything was called within 12 or 24 hours, then I was insolvent. Q. Would you have been able to realize enough from your property within a reasonable time,—to sell the property? A. I could have paid everything in full without question." No proof was put in by the plaintiff of the actual condition of the husband's affairs. The schedules of his assets and liabilities were not before the court, nor was there any evidence in detail offered to establish insolvency, much less the extent thereof. The mere fact that the husband was indorser upon two notes, aggregating but a small sum of money, which had been discounted for him, and which matured on May 29th and on June 16th, respectively, does not establish his insolvency on May 3d. The learned counsel for the respondent says that it is now too late to raise the objection that the evidence was not sufficient to establish insolvency, and that, if it had been raised at the trial, the plaintiff undoubtedly would have supplied the necessary proof conclusively to establish it. But I am considering whether the proof in the case established such facts as would have afforded reasonable cause to an ordinarily prudent person to believe that on May 3, 1900, Mr. Johnson was insolvent, or would have afforded such a person reasonable cause to believe that the transfer made on that day in payment of a debt was with the purpose of a preference. I also remark that the character of Mr. Johnson's business and obligations was quite different from that of the merchant or dealer in commodities. He was engaged in transactions in real estate,—in the buying, the selling, and the exchanging thereof. His liabilities were due to incumbrances thereon. The business is not like unto the buying and selling of stuff or wares, but has an element of speculation quite independent of the price lists of the markets. This renders it more difficult to infer that the creditor at any time was possessed of facts, or could, upon reasonable inquiry, have become possessed of facts, which established, or ought to have established, his insolvency. Moreover, this is not a case where the debtor possesses nothing wherewith to pay his debts which were unsecured, but where those debts appear as a continuous charge and an incumbrance upon the property which presumably theretofore afforded a sufficient security. Mrs. Johnson testifies that she knew nothing of her husband's affairs; that she had no reason to believe that he had not sufficient property to pay his debts; that she knew "all about it approximately" as to the value of his property, but,

as far as knowing anything about it (i. e., that the valuation was not greater than his debts), she did not know, because she "had everything that heart and hand could wish for," and that she knew nothing about it until after his failure. I think that the evidence fails to establish that Mrs. Johnson had reasonable cause to know, or that she should, as an ordinarily prudent person, have known, that by the transfer in question a preference was intended by the conveyance of May 3d.

The learned counsel for the respondent says that Mr. Johnson was Mrs. Johnson's agent, and therefore his knowledge was her knowledge. This loses sight of the fact that the transaction now in view is that of a transfer from debtor to creditor, and that it must appear that the creditor had reasonable cause to believe that a preference was intended. In this view it makes no difference whether Mr. Johnson conveyed the premises directly or caused another to convey them. Certainly, if he conveyed them directly, his knowledge was not her knowledge; otherwise the provision of the statute would be meaningless. And I think that his mere direction that the grantor convey to her, instead of first to him that he might convey to her, does not make him her agent in the sense that she is presumed to know all that he knew, or is to be charged with his intent.

The subsequent dealings with the bank were isolated from the conveyance to Mrs. Johnson. If the conveyance to her was valid, then we have not even the case of an owner of property discharging the debt of another, but of the owner of property discharging the debt for which she was also liable, and for which her property might be impounded.

The judgment should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.