ing to pay a just claim, or if his conduct in refusing to give the consent provided in section 1822 of the Code of Civil Procedure was contumacious or in bad faith, the court could properly compel him to personally pay the costs of the litigation thus unnecessarily carried on, while, if his conduct was marked by considerations of justice and fair dealing, the court might place the burden upon the estate, and the requirement that the trial judge should certify the facts is in harmony with this provision. We apprehend, therefore, that it was the duty of the justice who presided at the trial, and who heard this motion, to certify the facts. He has, in his order, certified, in substance, that the executors involved in this motion have not unreasonably resisted the plaintiff's claim, and the fact that it was reduced fully one-half by the verdict of the jury justified this conclusion, but he has refused to certify that which is equally obvious, that the defendants did not "file the consent provided in section 1822 at least ten days before the expiration of six months from the rejection thereof," and this affects a substantial right of the plaintiff, of which she has a right to complain. The giving of this certificate is a necessary prerequisite to the awarding of costs in actions of this character (Matson v. Abbey, 141 N. Y. 179, 36 N. E. 11; Scheu v. Blum, 119 App. Div. 825, 829, 104 N. Y. Supp. 887), and to withhold it is to deprive the plaintiff of a right which the law gives her to have the costs of the litigation to which she has been subjected. See Pauley v. Millspaugh, 95 App. Div. 208, 209, 88 N. Y. Supp. 565, and authorities there cited.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion for a certificate of the facts appearing upon the trial should be granted, without prejudice to the right of the court to determine whether the costs should be paid by the executor personally or out of the estate. All concur except HIRSCHBERG, J., who dissents.

---

UNION BANK OF BROOKLYN v. UNITED STATES EXCH. BANK.

(Supreme Court, Appellate Division, Second Department. February 17, 1911.)

1. BANKS AND BANKING (§ 40*)—STOCKS—DIVIDENDS—TRANSFER OF STOCK.

The delivery of a bank stock certificate, with an assignment in blank with a power of attorney indorsed passes the entire title, both legal and equitable, notwithstanding that by the terms of the charter or by-laws of the corporation the stock is declared to be transferable only on its books.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 49, 51-54; Dec. Dig. § 40.*]

2. BANKS AND BANKING (§ 40*)—STOCKS—DIVIDENDS—TRANSFER OF STOCK— METHOD PRESCRIBED BY CERTIFICATE.

Where neither the charter nor the by-laws of a banking company make its stock transferable only on its books, a provision to that effect in its certificates of stock cannot limit the unconditional right of transfer.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 49, 51-54; Dec. Dig. § 40.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BANKS AND BANKING (§ 40*)—LIEN OF BANK ON STOCK.

Stock Corporation Law (Consol. Laws, c. 59) § 51, permits a corpora-
tion to refuse to transfer stock on its books until the stockholder's debt
to the company is paid, provided the certificate shows on its face that
the company has that right. *Held* that, where a certificate of bank
stock did not contain the required statement, the common-law rule ob-
tains, by which a corporation has no lien on its stock, and the bank
could not refuse to transfer stock owned by its debtor to a, purchaser
from him.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 50;
Dec. Dig. § 40.*]

4. BANKS AND BANKING (§ 41*)—PROFITS AND DIVIDENDS—WHO ENTITLED—
ASSIGNEE OF CERTIFICATE.

The owner of stock in the defendant bank assigned and delivered the
certificate to plaintiff as collateral security for a loan. After assign-
ment to plaintiff the assignor became indebted to defendant, and the
dividends on the stock, which had never been transferred on the books
of the defendant, as provided by the certificate, were claimed by the de-
fendant. *Held*, that the rights of the plaintiff became fixed and vested
before the assignor became indebted to the defendant, and the dis-
tributive share of the dividends paid by defendant in liquidation be-
longed to plaintiff, and were not subject to any set-off on account of the
indebtedness of the assignor to the defendant.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 41.*]

Appeal from Special Term, Kings County.

Action by the Union Bank of Brooklyn against United States Ex-
change Bank. From a judgment for plaintiff, defendant appeals.
Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and
RICH, JJ.

Hector M. Hitchings, for appellant.

Paul Grout (Chauncey E. Treadwell, on the brief), for respondent.

RICH, J.   The question to be determined upon this appeal is:
Which of the two parties have prior and superior right to a fund paid
as dividends upon ten shares of the capital stock of the defendant
standing on its books in the name of Harry L. Feldman?

The undisputed facts are that on March 24, 1907, the defendant
transferred ten shares of its capital stock, of the par value of $100
each, to Feldman, and issued a certificate therefor, which provided
that the stock was transferable only on the books of the bank, in
person or by power of attorney, and surrender of the certificate.   The
same day that the certificate was issued Feldman obtained a loan from
the plaintiff of $1,000 upon his promissory note, which was secured
by an assignment of this·stock and the delivery of the certificate to
plaintiff as collateral.   This note was paid June 24th, and four days
later another loan of $1,000 was made by plaintiff to Feldman upon
his promissory note, payable in three months, which recites the pos-
session of the stock (which plaintiff had retained) as collateral.   This
note was subsequently renewed for one month, and the stock was re-
tained as collateral at Feldman's request.   This last note remains un-
paid.   Six months after the transfer of the stock to the plaintiff, the
defendant discounted promissory notes for. Feldman amounting to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

$4,600, which were not paid at maturity and remain unpaid. Subsequently the defendant went into voluntary liquidation, and after the payment of all of its debts there remained a surplus for distribution among its stockholders, and dividends amounting to 73 per cent. have been paid. Checks were made payable to the order of Feldman for dividends upon the stock standing in his name (which had not been transferred). These checks were not delivered, and at the time of the trial were in the possession of defendant. No notice was given to plaintiff of the dissolution proceeding or of any dividends. On May 14, 1908, the plaintiff gave the defendant notice of its ownership of the stock and demanded its share of the dividends.

The defendant contends that the ownership and legal title to the stock, notwithstanding the assignment to plaintiff, was in Feldman, and that, after the commencement of dissolution proceedings, some time prior to May 1, 1908, the stock had no legal status as such, and could not be transferred; that Feldman was the owner for the purposes of the distribution; that he could collect no dividends until his indebtedness was paid; and that plaintiff's legal status was no better than Feldman's. This contention is based upon the assumption that a valid transfer of the stock could not be made, except by transfer upon the books of the bank.

I find myself unable to concur in this view. I think it is the well-settled law of this state that the delivery of a stock certificate, by assignment in blank and a power of attorney indorsed, passes the entire title, both legal and equitable, notwithstanding that by the terms of the charter or by-laws of the corporation the stock is declared to be transferable only on its books. McNeil v. Tenth National Bank, 46 N. Y. 325–331, 7 Am. Rep. 341. The defendant had no claim or lien upon the stock until after its transfer to the plaintiff. There is no proof that the stock of defendant is made transferable only on its books, by either its charter or by-laws, and in the absence of such a provision in the charter or by-laws the provision in the certificate of stock could not have the effect of limiting the unconditional right of transferring it. Kinnan v. Sullivan, 26 App. Div. 213, 50 N. Y. Supp. 95. The defendant had no lien upon the stock, and no right to offset the indebtedness of Feldman against the dividends declared thereon.

At common law a corporation has no lien upon its stock, and this rule is applied in this state, in the absence of statutory authority, to banks (Bank of Attica v. Manufacturers' & Traders' Bank, 20 N. Y. 501) and to business corporations (Driscoll v. West Bradley & C. M. Co., 59 N. Y. 96). Section 51 of the stock corporation law (Consol. Laws, c. 59) is the only statutory authority I am able to find giving a corporation the right to refuse to consent to a transfer of its stock by a stockholder until his indebtedness is paid, and this right is only given when the provisions of the section are written or printed upon the certificate of stock. The section is not applicable to the case at bar, because no reference to the provision of the section appears upon the certificate issued to Feldman.

The rights of the plaintiff became fixed and vested before the de-

fendant went into liquidation, and the distributive share of its assets to which the plaintiff as a stockholder was entitled is not subject to any set-off on account of the indebtedness of Feldman at the time of its dissolution. Bridges v. National Bank of Troy, 185 N. Y. 146, 151, 77 N. E. 1005; Pearsall v. Nassau Nat. Bank, 74 App. Div. 89, 77 N. Y. Supp. 11.

The record discloses no errors, and the judgment must therefore be affirmed, with costs. All concur.