ARTHUR H. HALE, Respondent, *v.* WEST PORTO RICO SUGAR COMPANY and THE NEW YORK TRUST COMPANY, Appellants.

First Department, April 7, 1922.

Corporations — action to compel transfer of stock of Delaware corporation on books of corporation — stock delivered in this State by corporation to brokers for sale — brokers wrongfully used it in Massachusetts as their own collateral — plaintiff purchased without notice of claim of corporation — by-law that stock could be transferred only on books of company — plaintiff entitled to have stock transferred to him on books — estoppel — corporation estopped from claiming as against plaintiff that stock was delivered conditionally to brokers — judicial notice not taken of statutes of another State — transfer may be enforced in this State.

One who purchases stock in a Delaware corporation, for value and without knowledge of any claim of the corporation to the stock, is the owner thereof as against such corporation and entitled to have the same transferred on the

**37**

books of the corporation and to have new certificates issued in his own name therefor, where it appears that the corporation issued the stock in this State to brokers without consideration and merely for the purpose of having them sell it, certifying, however, that the brokers were the owners thereof; that it was transferable " only on the books of the company by the holder   *   *   * in person or by a duly authorized attorney upon surrender " of the certificate properly indorsed, and that the brokers, in the State of Massachusetts, duly executed in blank the assignment and power of attorney on each certificate and wrongfully pledged the stock as collateral to their note, the stock later being bought by the plaintiff at auction.

Under the law of this State and the State of Massachusetts, a by-law of the corporation providing that the stock was transferable on the books of the company only upon surrender of the certificate is of no importance in such a case, for the corporation is estopped as against a purchaser without notice from claiming that the delivery of the certificates to the brokers was made conditionally and that they did not comply with the conditions; and as no proof was offered of the Delaware statutes and this court will not take judicial notice of the statutes of another State, it is not to be presumed that the laws of Delaware authorized the corporation to make a by-law protecting it against its own voluntary act in issuing stock to the detriment of a purchaser in due course and for value.

*It seems,* that since the corporation maintains a transfer agency in this jurisdiction, the transfer may be enforced here and it could be enforced here against the officers authorized to make the transfer.

APPEAL by the defendants, West Porto Rico Sugar Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on or about the 27th day of April, 1921, upon the decision of the court, rendered after a trial at the New York Special Term, adjudging that the plaintiff is the owner of 700 shares of the preferred stock in the defendant, the West Porto Rico Sugar Company, a Delaware corporation, which for brevity will be referred to as the Sugar Company, and entitled to have the same transferred to his name on the books of the company by its transfer agent in New York, the other defendant, which is a domestic corporation, and to receive certificates in his own name therefor. The Sugar Company asserts title to the stock which consists of eight certificates duly issued by it in the months of June and July, 1917, at New York city, to Toole, Henry & Co., a New York stock brokerage firm. The Sugar Company by each certificate expressly certified that Toole, Henry & Co. were the owners thereof and that it was transferable " only on the books of the company by the holder   *   *   * in person or by a duly authorized attorney upon surrender " of the certificate properly indorsed. Under date of July 10, 1917, the brokers duly executed in blank the assignment and power of attorney on each certificate; and on or about the 30th of September, 1918, they pledged the certificates as security for their promissory note for $40,000 dated that day and payable to the order of one Van Nostrand. The note recited that the stock was delivered as collateral security for its payment and obligated the makers to furnish

additional collateral in the event that the market value of the security declined.   Plaintiff was a banker and resided at Manchester, N. H., and was president of the First National Bank and treasurer of the Merrimac Reserve Savings Bank there.   He had from time to time purchased securities of or through H. C. Spiller & Co., a firm of bankers at Boston, Mass., and with a cashier's check of the First National Bank of Manchester for $40,000, dated the 28th of September, 1918, to the order of H. C. Spiller & Co., he purchased the note, which had been indorsed in blank by the payee.   The interest for six months to March 30, 1919, was paid.   In April, 1919, the brokers became bankrupt and a receiver in bankruptcy was appointed for them.   Plaintiff observed a mention of this in the press and thereupon demanded of H. C. Spiller & Co., of the brokers and of their receiver in bankruptcy, and of Van Nostrand payment or further collateral; and receiving neither, authorized H. C. Spiller & Co. to sell the stock and sent it to them for that purpose.   They sold it at public auction on the 30th of April, 1919, through a firm of stock auctioneers and bid it in for the plaintiff at $14,000, which amount he paid by check and the surplus over expenses was returned to him.   The plaintiff thereafter transmitted the certificates to Spiller & Co. to have them transferred to his name, and for that purpose they caused the name and address of one May, who was employed by them, to be inserted in the blank assignment.   The certificates were then presented to the defendants for transfer and on their refusal to make the transfer May reassigned the certificates to the plaintiff.   The testimony of the plaintiff, which is uncontroverted, shows that when he bought the note and received the collateral he was not aware of any claim of the Sugar Company to the certificates and did not hear of any such claim until after the bankruptcy of the brokers; and that after that he read or heard that the brokers had been guilty of some crookedness but that the first he learned with respect to the Sugar Company's claim concerning the stock was when he had it presented for transfer; that the reason he demanded further collateral was that the market price of the stock went down and that he had brought no action against the indorser of the note because, on inquiry, he ascertained that he was not financially responsible.   He further testified that when he purchased the note from Spiller & Co. they represented that the brokers who made the note were a first class firm and that this was confirmed by information derived from another firm with whom he had had business relations, and that he filed and proved a claim in bankruptcy against the brokers for the balance of the indebtedness over the amount for which the stock sold but has received no dividend thereon.

Defendants pleaded and offered to prove that the Sugar Company delivered the certificates of stock and other certificates for like stock to the brokers to sell on the basis of $850 for ten shares of the preferred and four shares of the common, under an agreement by which the brokers agreed to pay for the same on or before November 28, 1917, and to return any of the stock remaining unsold; that it received no consideration from the brokers for the stock in question; that the by-laws of the company provided that the shares of stock were transferable on its books only upon surrender of the certificates; that it had no notice of the disposition of the stock by the brokers until the certificates were presented to it in behalf of the plaintiff for a transfer; that in October, 1918, the Sugar Company brought an action in replevin against the brokers for the certificates and that the action was pending when the brokers became bankrupt. The court entertained the offer of the defendants to prove these facts but excluded the evidence on the plaintiff's objection that it was irrelevant and immaterial and that the defense pleading those facts was insufficient in law and defendants excepted. Defendants further pleaded, but offered no evidence in support thereof, that the brokers sold and accounted for 2,105 shares of the preferred and 842 shares of the common stock and on the 28th of November, 1917, held 7,895 shares of the preferred stock, including the stock in question, and 3,158 shares of the common stock which they failed to return on demand; that a petition in bankruptcy was filed against the brokers on the 2d of April, 1918, and they were subsequently adjudged bankrupts; that if plaintiff's assignor acquired any title to the certificates, it was only equitable title which could not become legal title until the presentation and surrender of the certificates for transfer and that this should have been but was not done within a reasonable time, and had it been, the brokers would have been solvent since they remained solvent until the 2d of April, 1919, and until that time owned a seat on the Stock Exchange which was worth $100,000, and that plaintiff, by failing to present the stock for transfer within a reasonable time, has forfeited his rights; that on the 20th of March, 1918, at a meeting of the stockholders of the Sugar Company, participated in by the brokers representing the stock for which they had not accounted, a resolution was unanimously adopted to transfer the assets of the company to the Porto Rico Company of the same name with the privilege to the stockholders to exchange their stock for stock in the new company and that the brokers at that time voted on the stock in question and thereafter failed to surrender it upon due demand for exchange for stock in the new company and that the assets were transferred to the Porto Rico Company and the franchise

of the Sugar Company was allowed to lapse and the company became dissolved before transfer was requested by the plaintiff and judgment was demanded for the.dismissal of the complaint.

*Bouvier & Beale* [*Julian B. Shope* of counsel; *B. F. Norris* with him on the brief], for the appellants.

*Patterson, Eagle, Greenough & Day* [*Carroll G. Walter* of counsel; *J. Rhodes O'Reilly* with him on the brief], for the respondent.

LAUGHLIN, J.:

On the trial appellants contended that the law of Massachusetts governed, on the theory that the note was made and negotiated by the brokers there and that they there delivered the certificates as collateral for the payment of the note; and the plaintiff claimed that the law of New York, where the stock was issued to the brokers, governed. Appellants now claim that the law of Delaware governs. They pleaded that the Sugar Company, pursuant to its authority under the law of its incorporation, adopted a by-law to the effect, as stated on the certificates, that they were transferable only on the books of the company on surrender of the certificates by the holder in person or by his duly authorized attorney. Appellants offered to prove the by-law but made no offer with respect to the statutory law of Delaware. In *Union Bank* v. *United States Exchange Bank* (143 App. Div. 128) it was held that the delivery of a certificate of stock by an assignment in blank and a power of attorney indorsed thereon passes the entire legal and equitable title, even though the charter or by-laws of the company provide that the stock is transferable only on the books of the company and on surrender of the certificates and even though there be a provision to that effect on the face of the certificates, and that at common law a corporation retains no lien on the stock issued by it and, therefore, it retains no right or lien in the absence of a statute conferring it. (See *Hammond* v. *Hastings*, 134 U. S. 401.) We cannot take judicial notice of the statutory law of another State and it is not to be presumed that the laws of Delaware authorized the Sugar Company to make a by-law protecting it against its own voluntary act in issuing stock and affecting the negotiability of its stock and manifestly, without clear statutory authority therefor, such by-law could not affect the title of a purchaser in due course and for value. (*Kinnan* v. *Sullivan County Club*, 26 App. Div. 213.) In the absence of a statute reserving rights in favor of a business corporation after the issuance of its stock, such a general provision requiring a surrender of the certificates as a condition precedent to the transfer of the stock should be construed merely as protecting the corporation with respect to recognizing the owner and as giving to the certificates a

certain degree of negotiability by assuring the holder that his rights cannot be impaired by the transfer of his stock or the issuance of other certificates therefor excepting upon surrender of the certificates and that is the most recent view taken thereof by the Court of Appeals. (*Zander* v. *N. Y. Security & Trust Co.*, 178 N. Y. 208, 211.) One object of this provision is for the benefit and protection of the corporation with respect to the payment of dividends and the holding of its corporate meetings, and of course until it has notice of the transfer of the stock it is warranted in recognizing the holder of record, and the liability of stockholders to creditors at times is dependent upon their being holders of record. (*Johnson* v. *Underhill*, 52 N. Y. 203; *McHenry* v. *Jewett*, 26 Hun, 453; revd., on another point, 90 N. Y. 58; *Commercial Bank of Buffalo* v. *Kortright*, 22 Wend. 348; *Matter of Long Island R. R. Co.*, 19 id. 37; *New York & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *Shellington* v. *Howland*, 53 id. 371; *Sinclair* v. *Fuller*, 158 id. 607, and *Elyea* v. *Lehigh Salt Mining Co.*, 169 id. 29.) The Legislature has declared the public policy of this State with respect to the transfer of certificates of stock by section 162 of the Personal Property Law (as added by Laws of 1913, chap. 600). It is therein provided that the title to such certificates can be transferred only by delivery thereof indorsed either in blank or to a specified person appearing thereby to be the owner or by the delivery of the certificate and a separate document containing a written assignment thereof or a power of attorney to sell, assign or transfer the same or the shares represented to be signed by the person appearing by the certificate to be the owner of the shares, which assignment or power of attorney may be either in blank or to a specified person and that these provisions shall be applicable although the charter or articles of incorporation or code regulations or by-laws of the corporation issuing the certificate and the certificate itself provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent. The statutory law of Massachusetts was the same. (Mass. Acts of 1910, chap. 171, § 1.)* It thus appears that in this jurisdiction where the certificates were issued by the corporation to the brokers and in Massachusetts where they were diverted by the brokers, the statutory law protects the title of the purchaser against any right attempted to be reserved by the corporation. I am of opinion, however, that neither under the law of New York nor under the law of Massachusetts is the provision in the certificates to the effect that they were only transferable on the books of the company on surrender thereof of any importance in the case at bar, for here the

---

* Mass. Uniform Stock Transfer Act, § 1.— [Rep.

corporation has not been induced, on the theory of loss of the certificates or otherwise, to issue new certificates in place of these to another claiming to be both the record and true owner and it not only authorized the brokers to negotiate these certificates, but it certified that they were the owners thereof, and, therefore, it is estopped as against a purchaser without notice, such as the plaintiff is, from claiming that the delivery of the certificates to the brokers was made conditionally and that they did not comply with the conditions. (*Driscoll* v. *West Bradley & C. M. Co.*, 59 N. Y. 96; *New York & N. H. R. R. Co.* v. *Schuyler, supra,* 80; *McNeil* v. *Tenth National Bank*, 46 N. Y. 325; *Union Trust Co.* v. *Oliver*, 214 id. 517; *Talcott* v. *Standard Oil Co.*, 149 App. Div. 694; *Holbrook* v. *New Jersey Zinc Co.*, 57 N. Y. 615; *Hudson Trust Co.* v. *American Linseed Co.*, 190 App. Div. 289; *Fifth Ave. Bank* v. *F. S. S. & G. S. F. R. R. Co.*, 137 N. Y. 231; *American Exchange Nat. Bank* v. *Woodlawn Cemetery*, 194 id. 116, 126, 127; *Baker* v. *Davie*, 211 Mass. 429; *Russell* v. *American Bell Tel. Co.*, 180 id. 467.) It is quite clear, I think, that the Sugar Company after having issued the stock to the brokers, certifying that they were the owners thereof, cannot now be heard to say that one purchasing in good faith and for value from the brokers could not acquire title as against it without first having the certificates surrendered and obtaining its consent to the transfer and to the issuance of new certificates; and it was, I think, plainly the duty of the defendant to make the transfer when duly requested by plaintiff (*New York & N. H. R. R. Co.* v. *Schuyler, supra,* 80; *Travis* v. *Knox Terpezone Co.*, 215 N. Y. 259), and since it maintains a stock transfer agency in this jurisdiction the transfer may be enforced here (*Lockwood* v. *U. S. Steel Corporation*, 209 N. Y. 375) and it could be enforced here against the officers authorized to make the transfer. (*Travis* v. *Knox Terpezone Co., supra.*)

The judgment is, therefore, right and should be affirmed, with costs.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Judgment affirmed, with costs.