## THE AURORA NATIONAL BANK v. DILS.

[No. 2,205. Filed October 29, 1897.]

BILLS AND NOTES.—*Indorsement of Bank Check.*—The legal signification of the indorsement of a bank check by the payee cannot be contradicted as between him and an indorsee simply because the latter is an immediate and not a remote indorsee. *p. 323.*

SAME.—*Indorsement of Check.*—*Consideration.*—The contractual undertaking between the payee of a bank check and his immediate indorsee cannot be disputed, but it may be shown that it was entered into without consideration, or that the consideration has failed. *p. 323.*

The Aurora National Bank v. Dils.

SAME.—*Deposit in Bank of Check Payable to Agent.*—*Indorsement by Agent.*—The fact that the proceeds of a check were placed to the credit, not of the payee individually, but to his credit as agent for the drawer, charged the bank receiving the check with notice of the fiduciary character of the deposit, but did not make the indorsement a contract without consideration.  *p. 329.*

BANKS AND BANKING.—*Application of Deposit to Payment of Debt Due Bank.*—Where a general depositor becomes indebted to the bank, and the debt is due and payable, the bank, by virtue of its lien or right of set-off, may apply the debtor's deposit to the payment of the debt.  *p. 329.*

SAME.—*Depositor to be Paid Upon Demand.*—The obligation of a bank to a general depositor is to pay upon his proper demand.  *p. 329.*

From the Dearborn Circuit Court.  *Reversed.*

*G. M. Roberts, C. W. Stapp* and *McMullen & McMullen,* for appellant.

*W. R. Johnston,* for appellee.

BLACK, J.—The appellant was sued by the appellee, who recovered judgment upon a special verdict, in which the facts were shown, in substance, as follows: The appellant, a bank of deposit, located at Aurora, Dearborn county, Indiana, had been in existence for more than five years at the time of the trial in March, 1896, and Alexander B. Pattison had been its cashier from its organization.  From the month of July, 1894, to the 8th of August, 1895, the appellee made deposits of money in said bank, and on the morning of the 8th of August, 1895, had on deposit there of his individual funds, $302.50; which sum was never drawn out of said bank by him and never paid to him by said bank.  On the 23d of September, 1895, before the commencement of this suit, the appellee, in said bank, presented to the appellant a check signed by appellee, drawn against his individual account for said sum, and demanded of the appellant the payment of said sum, and so presented said check to the cashier of the bank, and so made demand of him, during banking hours; but payment of said sum was refused.  From July, 1894, to

and including August 3, 1895, the appellee was the agent of the G. Y. Roots Company, it being his business during the time he was such agent to buy wheat for said company. During that period he had at said bank a separate and distinct account of his deposits in and withdrawals of money from said bank, on his individual account; also, a separate account of his deposits and withdrawals of money and the proceeds of checks, as the agent of said company, pertaining to its Lawrenceburgh house; also, a separate account of his deposits and withdrawals as agent of said company pertaining to the business of its Cincinnati house, said company having during such period offices and business both at Lawrenceburgh, Indiana, and at Cincinnati, Ohio. During all the time from July, 1894, up to and including the 3d of August, 1895, the appellant had notice that the appellee was the agent of said company. The appellant, on the 3d of August, 1895, knew that the appellee was the agent of said company, and that he was purchasing wheat for said company, as its agent. On that day the appellee presented to said bank a check drawn by said company, payable to the order of the appellee, for $300.00, and when it was so presented the appellant received it and credited the amount thereof on its books to the account of H. H. Dils, agent of the G. Y. Roots Company, on the account kept with appellee as such agent of said company, for the Lawrenceburgh house of said company, and charged itself on its own books with that sum on account of said check, in the account which it kept with the appellee as agent of said company for the Lawrenceburgh house of said company. At the time the appellant made these entries on its books it had notice that the appellee was at that time the agent of said company. When said check was so presented

VOL. 18—21

the appellant had notice that its proceeds were intended by said company and by the appellee, to be used by the appellee as agent of said company to pay for wheat purchased by him for said company. When the appellant received the check and entered the amount thereof on its books as a credit to the appellee, as such agent, and a charge against itself, the proceeds of the check were the property of the said G. Y. Roots Company, and the appellant had notice that such proceeds were intended by said company to be used by the appellee, as its agent, in paying for wheat purchased by him as agent for said company. From July, 1894, to and including August 3, 1895, the appellee had a separate pass-book in which the appellant credited and charged the deposits and withdrawals of his individual funds, and another pass-book in which it entered credits and charges of his deposits and withdrawals as the agent of the G. Y. Roots Company relating to said company's Lawrenceburgh house, and also a separate and distinct account on the last mentioned pass-book in which the appellant entered his deposits and withdrawals as agent for the G. Y. Roots Company pertaining to the business of said company's Cincinnati house. The keeping of three accounts on appellee's pass-books and appellant's bank books was suggested and advised by the appellant's cashier. When said check for $300.00 was so presented, the amount thereof was credited by the appellant, and charged against itself on the appellee's pass-book kept by him as agent of said company, on the Lawrenceburgh house account. Said check for $300.00 was protested for nonpayment, and when so protested was returned to the appellant. When the check and the protest thereof were returned to appellant, it sent the same by mail to the appellee on the 7th of August, 1895.

The Aurora National Bank v. Dils.

The appellee drew checks against said sum of $300.00, the proceeds of said check drawn by said company, all the checks so drawn by the appellee being signed "H. H. Dils, Agt.," and having written upon the faces thereof, "Lawb House;" and the checks so drawn by the appellee were charged by the appellant on its books and on one of the appellee's pass-books, against him as agent of the Lawrenceburgh house of said company, "Lawb House," so written, being intended by the appellee as a direction to the appellant to so charge the amounts of said checks, and being so understood by the appellant. The cost of said protest was $2.50.

On the 8th of August, 1895, the appellant charged on its books $302.50 to the individual account of the appellee, because of the nonpayment and protest of said check of said company and the protest fees. The appellee never authorized the appellant to so charge him. After the making of this charge against the individual account of the appellee, the cashier of the appellant requested him to draw his individual check for said sum of $302.50, but he refused to give such check, and never did give it. On or about the 1st of September, 1895, the appellee left with the appellant his individual bank book, to be balanced. He had no knowledge that said $302.50 had been charged to his individual account until his individual pass-book was returned to him by appellant, which was on or about the 3d of September, 1895, and he then learned for the first time that said sum had been so charged, after he left said bank and returned to his place of business.

It was found by the jury that the appellant was indebted to the appellee in the sum of $302.50, unless he was indebted to it in that amount on account of the nonpayment and protest and costs of protest of

said check drawn by said company; also, that if the appellee indorsed said check drawn by said company, as agent for said company, the appellant was indebted to him in the sum of $302.50; also, that when he so presented said check of the company he wrote his name upon the back of said check; and that when he presented it and wrote his name on the back thereof, he was acting as the agent of said company, and the appellant had notice that he was so acting; that in the act of writing his name on the back of the check, he was acting as agent of said company, of which fact the appellant had notice at the time it received the check; that he wrote his name upon the back of the check only as evidence of his receipt, as the agent of said company, of the proceeds of the check, and in so writing his name he did not intend to become individually liable as indorser of the check, or as guarantor thereof, or to become individually liable for its payment in case of the nonpayment thereof by said company; that the appellant had notice at the time it received the check that appellee did not intend, by writing his name on the back thereof, to become individually liable.

The sum of $302.50 which the appellee had on deposit in said bank on the morning of the 8th of August, 1895, had never been paid to him in any way other than by being charged by the appellant to the appellee's individual account, by reason of the nonpayment of said check drawn by said company. The appellee knew that said check had not been paid, on and after the 8th of August, 1895. The cashier of the appellant, on the day last mentioned, informed the appellee that the appellant intended to hold said sum of $302.50 out of appellee's individual funds then on deposit in said bank, and to charge his individual account therewith.

The following is a copy of the check so presented on

the 3d of August, 1895: "$300.00. The G. Y. Roots Co. Lawrenceburgh, Indiana, August 3, 1895. Pay to the order of Hugh Dils three hundred dollars. The G. Y. Roots Co., by E. M. Lee. To the Citizens National Bank, Lawrenceburgh, Ind. No. 3621."

The appellee then and there indorsed the check, by writing his name, H. H. Dils, on the back thereof. Nothing was then and there said by the appellee or the appellant about his indorsing the check as agent. After he so indorsed it, the appellant accepted it, and then gave him credit for $300.00 on the account of H. H. Dils, agent of the Lawrenceburgh house, and caused said check to be duly presented to the Citizens' National Bank at Lawrenceburgh for payment, as soon as could be done. Payment of the check was demanded of the last named bank, and was by it refused because said company had no funds in said bank. Said company had no funds in the Citizens National Bank of Lawrenceburgh on or after August 3, 1895. Notice of nonpayment of the check was duly sent to the appellee at Aurora, Indiana, on the same day it was presented for payment to said bank, by mail, postpaid. The check was returned to the appellant unpaid. The check was returned by the appellant to the appellee protested and unpaid on the 7th of August, 1895.

The appellant paid out on the checks of the appellee, signed by him as agent of the Lawrenceburgh house, the entire amount of said $300.00 before the protested check was returned. The appellant charged the appellee on his individual account $302.50, the amount of the company's check and protest fees, after the check was returned to the appellant, and before the commencement of this suit, and the appellee was notified of such charge before the bringing of this suit. The appellant charged said amount of $302.50 on appellee's bank book. The appellant and the appellee

did not have a settlement, and the books of the appellant and appellee were not balanced.

When the appellee presented said check of the company to the appellant on the 3d day of August, 1895, he did not know that said company had no funds in the Citizens National Bank of Lawrenceburgh, Indiana.

The jury assessed the appellee's damages at $302.50, if upon the facts found he was entitled to recover; and for that amount judgment was rendered in his favor, he being the plaintiff and the appellant the defendant.

In referring to the action of the court in overruling the appellant's motion for a new trial, it has been claimed in argument that the evidence was insufficient, and some evidence has been indicated which it is claimed showed that when the company's check was presented nothing was said concerning the indorsement. But the evidence thus indicated supports what is found upon this matter in the verdict. Doubtless if the question as to the liability of the appellee upon his indorsement could be affected by conversation which took place at the immediate time of the particular transaction, and the intention and understanding of the parties could be thus shown and given effect, the same result might be reached by showing a continuous course of dealing in similar transactions for a long period of such character as indicated their intention and understanding in this particular instance. If it were once settled between the parties what effect should be given to a particular form of dealing it would not be necessary while the same course of dealing was in progress to negotiate and settle anew the relations of the parties at every recurring transaction in the continuous business.

The question is, whether the appellee must be held liable individually upon his indorsement strictly, or may be relieved by showing facts not indicated by the

written contract. If so, the question would arise whether the extraneous facts shown in the verdict should relieve him.

The indorsement is not expressly restricted or qualified, but is absolute in form, without ambiguity or obscurity. It cannot be said that the appellee in his indorsement of the check assumed, as agent, any obligation for his principal. The appellee's principal had clearly indicated its purpose to be bound as drawer of the check, and had made it payable to the order of the appellee, and thus had made it proper for him to indorse it in his own name. It could not, without contradiction of the writing, be said that the drawer itself, through its indorsement by its agent, assumed the obligation of an indorser. If an agent make a contract which places no obligation upon himself individually, it must be binding upon his principal, if binding at all. A contract which can be said to have been made by an agent, merely as such, must bind a principal.

We think, then, that any claim that the name of the appellee was written on the back of the check by way of making an indorsement thereof as agent for the drawer, and not as and for himself individually, would be a contradiction of the written contract between the indorser and the indorsee. If the check might have been indorsed by the payee as agent, or as agent of the drawer, and the title to it thus be passed without the assumption of any liability by the indorser, yet it was not so indorsed. The indorsement was necessary to pass title to the indorsee, and it was effectual for such purpose. Certainly, if the check had gone on into the hands of a remote *bona fide* indorsee for value there could be no claim on behalf of the appellee as against such remote indorsee that the drawer was also, through its agent, the first indorser, and that the appellee did not indorse in his individual capacity.

The indorsement of a check is a distinct contract. The definite legal signification of the indorsement of such negotiable paper by the payee cannot be contradicted as between him and an indorsee, simply because the latter is an immediate and not a remote indorsee. The express written contract must not be so varied.

In the case of an immediate indorsee, the consideration is open to investigation. The contractual undertaking cannot be disputed, but it may be shown that it was entered into without any sufficient consideration, or that the consideration has failed; and for such purpose extraneous evidence is admissible, including all facts which tend to show, not that it was not intended that the parties should be bound as expressed in the written contract, but that such express obligation ought not to be enforced because of the absence of sufficient consideration. The agent may bind himself personally upon a consideration beneficial to his principal alone, and may so bind himself to one who is acquainted with the existence of the agency, and well knows that the agent has no interest in the transaction except as agent.

*Crum* v. *Boyd*, 9 Ind. 289, was an action on a promissory note. The defendants answered that at the time the note was given they were agents for a railroad company; that the plaintiff executed to said company a deed, conveying to it the right of way through his land; that the making of this conveyance was the only consideration for the note; that the plaintiff well knew at the time that the defendants had no interest in the transaction, except as agents of the company; and that it was understood that they were not to be personally liable on the note. It was held that this was not a sufficient answer. See, also, *Prather* v. *Ross*, 17 Ind. 495; *Shordan* v. *Kyler*, 87 Ind. 38; *Hayes* v. *Matthews*, 63 Ind. 412; *Smythe* v. *Scott*, 106 Ind. 245.

In *Hayes* v. *Matthews, supra,* it was said: "As the note under consideration purported on its face to be in legal contemplation the individual note of the makers, it follows that any defense which involved the introduction of parol evidence tending to give it a different construction, or to change its legal effect, was bad upon demurrer."

The fact that the proceeds of the check were placed to the credit, not of the appellee individually, but of the appellee as agent of the drawer, charged the appellant with notice of the fiduciary character of the deposit *(Bundy, Rec.,* v. *Town of Monticello,* 84 Ind. 119), but did not make the indorsement a contract without consideration, but, on the contrary, constituted a sufficient consideration. The fund thus supplied was all checked out. There was no want or failure of consideration.

Where a general depositor becomes indebted to the bank, and the debt is due and payable, the bank, by virtue of its lien or right of set-off, may apply the debtor's deposit to the payment of the debt, as was done by the appellant. See *Second National Bank* v. *Hill,* 76 Ind. 223. When that appropriation had been made, the funds so appropriated ceased to be a part of the appellee's individual deposit. For such portion of his individual deposit the appellant was no longer his debtor.

No question has been made in argument as to the right of the bank to retain the amount of the protest fees, being $2.50. The obligation of the bank to the general depositor is to pay upon his proper demand. It is not under obligation to pay upon an oral order, but is entitled to written evidence of payment. *McEwen* v. *Davis,* 39 Ind. 109; *Brown* v. *McElroy,* 52 Ind. 404. The only demand made by the appellee, as shown by the verdict, was by a check for $302.50. No demand has

been made for the payment of the amount of his deposit less the amount of the check for $300.00 drawn by said company. The bank was entitled to written evidence of payment of an amount not exceeding that, if any, which it owed him as a depositor, before it could be required to pay. It was not bound, at least in the absence of any offer or suggestion to such effect on the part of the appellee, to pay him a portion of an overcheck, presented to it, whatever it might have the right to do by agreement.

The question is not properly presented, therefore, as to whether upon such a demand he might recover the amount of the protest fees. Upon the facts shown by the verdict he does not appear to be entitled to recover any amount in this action.

The judgment is reversed, and the cause is remanded, with instruction to render judgment for the appellant upon the special verdict.