### IRISH v. CITIZENS' TRUST CO. OF UTICA, N. Y.

#### (District Court, N. D. New York.   August 13, 1908.)

1. BANKRUPTCY — VOIDABLE PREFERENCE — KNOWLEDGE OF DEBTOR'S INSOL-
   VENCY.

   A bank, which received payment of notes from an insolvent corpora-
   tion within four months prior to its bankruptcy, *held* not to have known
   at the time, or had reasonable cause to believe, that the debtor was in-
   solvent or intended a preference which would render the payment re-
   coverable as a preference by the trustee in bankruptcy.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§
   255, 256.]

2. CORPORATIONS—VOIDABLE TRANSFER OF PROPERTY UNDER NEW YORK STAT-
   UTE—INTENT TO PREFER CREDITOR WHEN INSOLVENT.

   Under section 48 of the New York stock corporation law (Laws 1892,
   p. 1838, c. 688), which provides that a transfer of property by a corpora-
   tion which is insolvent, or when its insolvency is imminent, with intent
   to prefer a creditor, shall be void, an intent to prefer cannot be in-
   ferred alone from the fact that the corporation was insolvent and known
   to be so by its officers; but where a corporation so situated made pay-
   ments only to its officers and to a single creditor to which it paid notes
   not yet due, using practically all of its cash for such purposes, and leav-
   ing other creditors unpaid, the facts, unexplained, are sufficient to estab-
   lish such intent.

3. BANKS AND BANKING—"LIEN" OF BANK ON DEPOSITS—NOTES OF DEPOSITOR.

   A bank holding notes of a depositor which are due has the right to
   charge the same to the depositor's account.   Such right is not strictly a
   lien, within the meaning of the bankruptcy law, but a right of set-off;
   but it can be exercised only as to notes which are due.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Bank-
   ing, §§ 353, 354.

   For other definitions, see Words and Phrases, vol. 5, pp. 4144–4152;
   vol. 8, p. 7707.]

4. BANKRUPTCY — SUIT BY TRUSTEE — RECOVERY OF PROPERTY TRANSFERRED BY
   BANKRUPT.

   An insolvent commercial corporation, which had lost its stock in trade
   by fire, collected the insurance thereon and deposited the same in the bank
   where it kept its account, which held a number of its notes, some of them
   payable on demand, and another not due.   From such deposit it paid
   the bank all of such notes, giving checks therefor, including the note
   not due, and which did not mature until after the bankruptcy of the
   corporation, which occurred within four months after the deposit and
   payments, which were both made by the officers of the corporation with
   knowledge of its insolvency and an intent to prefer the bank, in viola-
   tion of section 48 of the stock corporation law of New York (Laws 1892,
   p. 1838, c. 688).   The bank, however, did not have such knowledge nor
   reasonable cause to believe that the corporation was insolvent such
   as to render the payments voidable as a preference.   *Held*, that while
   the payments were voidable under section 48 of the state stock corpora-
   tion law and Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (U. S.
   Comp. St. 1901, p. 3449), the trustee in bankruptcy could recover the
   same only to the extent of the note which was not due, since as to the
   demand notes the bank had a lien or right of set-off which it could exer-
   cise as against the bankrupt or its trustee.

This action is to recover $11,102.33 and interest from February 10,
1905, under section 60b and section 67e of the bankruptcy act (Act
July 1, 1898, c. 541, 30 Stat. 562, 564 [U. S. Comp. St. 1901, pp.
3445, 3449]), and section 48 of the stock corporation law of the state
of New York (Laws 1892, p. 1838, c. 688).

Grant & Wager and Jones, Townsend & Rudd, for plaintiff.
Dunmore & Ferris and F. G. Fincke, for defendant.

RAY, District Judge. The Coventry-Evans Company, a corporation existing under the laws of the state of New York, was engaged in mercantile pursuits, and on the 27th day of January, 1905, an involuntary petition in bankruptcy was filed against it by three of its creditors, Charles W. Darling, Foster Bros. Manufacturing Company, and the Utica Sunday Tribune Company, and on the 10th day of February, 1905, the said company was duly adjudicated a bankrupt.

The bankrupt company, a stock corporation, was organized about April 1, 1902, and of its authorized capital stock, $20,000, $12,000 was issued at about that date. Among the members of the board of directors and stockholders of the company were John A. Breen, Charles J. Breen, Jeremiah C. Breen, Thomas Breen, Charles W. Darling, and Hammond P. Evans. Darling had little interest in the concern except as a creditor to the extent of some $7,000 or $8,000 and which indebtedness to him in the fall of 1904 was put in the form of a note due three months from date for $7,151.13. This note came due prior to December 10, 1904, and as early as January 14, 1905, Darling was insisting upon its payment. This company was also owing the defendant, Citizens' Trust Company of Utica, N. Y., something more than $11,000 in the form of notes discounted at the bank and which will be referred to hereafter. The company was owing large sums outside of the indebtedness referred to to various persons and firms of whom it purchased merchandise, etc., and much of this indebtedness was past due prior to the filing of the petition in bankruptcy, and payment had been urged. The company had not been able to pay, and had not paid, all of its accounts owing when due or when demand was made; but it had obtained extensions in many, and perhaps most, instances by paying something on account. The evidence shows and is quite conclusive that this company lost money largely from the time it commenced doing business. The books and inventory of the company, January 1, 1903, showed a net loss of a little over $3,000, and January 1, 1904, they showed an additional loss of something over $9,000 in running the business which, of course, wiped out the capital stock paid in of $12,000.

November 30, 1904, there was a fire in the store of the company which caused, substantially, a total loss. The company had an insurance upon its stock of $15,000. That the company met with a total loss, substantially, by this fire, must have been known to the defendant, the Citizens' Trust Company of Utica. The trust company also knew that the furniture company owed other debts, but did not know the amount or extent of its indebtedness; that is, there is no evidence showing that the trust company knew this. By some jugglery with figures and facts, the modus operandi not appearing, the adjusters made some sort of a statement in adjusting the fire loss that the company had made a gross profit in 1904, up to the time of the fire, of about $13,000 for that year alone, and the board of directors, on this statement and on one from John A. Breen, passed a resolution, December 10, 1904, that the company continue business, and it thereupon directed a man to go out and

purchase more goods. That the furniture company was then hopelessly insolvent is abundantly shown by the evidence. That this fact was known to the company and to the directors is conclusively proved. Its insurance money was but little more than sufficient to pay the indebtedness to the trust company, and its property and assets of all kinds, exclusive of this, would have paid but a small fraction of its other indebtedness. The officers and directors of the furniture company must have known, and I find that they did know, that they had been doing business at a large and increasing loss, and that the furniture company was insolvent. One of the Breens on the stand testified that in estimating the value of their stock of goods they took the cost price of them, and then added to that 50 or 60 per cent. There was no pretense that the goods had increased in value. This appears to me to be counting chickens before they are hatched. Quite likely, the most of these goods might have been disposed of at a profit of 50 or 60 per cent., but experience had shown that it cost much more than the profit to get it. Crediting these men with common sense and ordinary understanding, I am compelled to find, and do find, as above stated, that, at the time they made the payments to the defendant, the Citizens' Trust Company, they knew the company was insolvent. It does not follow, however, that the furniture company intended a preference, for hope burns brightly in the human heart, and I am convinced that the company intended to continue business and hoped to make money and pay off its indebtedness. In the beginning of December, 1903, the furniture company did not anticipate that Darling would demand payment of his note of over $7,-000, and it may be, and probably is, true that prior to the 15th of December, or about that time, the furniture company expected it would carry the loans with the trust company as it formerly had done and without other security or indorser.

The Citizens' Trust Company was not secured, and it is evident from the evidence in the case that, on or prior to December 15, 1904, the Citizens' Trust Company had demanded payment of a part at least of the indebtedness owing to it from the furniture company, for on that day the trust company, having on deposit with it more than that sum to the credit of the furniture company derived from its insurance, charged up to the account of the furniture company $6,070 of the notes of the furniture company, and the one who did this in the trust company testified that he had been promised a check. The check not being forthcoming prior to the close of the bank on that day, notes to this amount were charged to the account. The evidence is that, after this was done, and that evening, or the next day, the check promised came in. Under the bankruptcy law, this would not constitute a preference which can be recovered by the trustee in bankruptcy, unless I also find that the Citizens' Trust Company at the time had reasonable cause to believe that in making such payment it was intended by the furniture company to give a preference. It does not expressly appear that the trust company refused to loan money to the furniture company for the further carrying on of its business. I think the evidence fails to show that the trust company had reasonable cause to believe that the furniture company was insolvent, or that the payment to it of these notes

referred to would enable it to obtain a greater percentage of its debt than any other of the creditors of the furniture company of the same class.

It is contended, however, that under section 48 of the stock corporation law of the state of New York (Laws 1892, p. 1838, c. 688), in connection with section 67e of the bankrupt act (July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]), the plaintiff may recover this payment of December 15th.

Section 48 of the New York stock corporation law provides, in substance, that no transfer of any property of a corporation, which shall have refused to pay any of its notes or other obligations when due, by it or any officer, director, or stockholder thereof, nor any payment made when the corporation is insolvent, or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid, and that every transfer or assignment or other act done in violation of such provisions shall be void. It follows that, irrespective of any intent or knowledge of the insolvency on the part of the trust company, if the payment of December 15, 1904, was made by the furniture company "with the intent of giving a preference" to the Citizens' Trust Company over the other creditors of the furniture company, such payment was invalid and void, and under the provisions of section 67e of the bankruptcy act the trustee may recover such payment. When that payment was made, assuming it to have been a voluntary payment of the notes, was it made with intent to prefer the Citizens' Trust Company? If at that time the furniture company intended and expected to continue its business, to pay all its creditors, and expected that when needed it could have the same line of credit with the trust company it had had before, and only paid up these notes to save interest, an intent to prefer, in the sense of the law, cannot justly be imputed.

During the month of December, 1904, the furniture company received about $14,850 insurance money on its fire loss, which it deposited with the trust company. There is no special significance in this, as the furniture company did its banking business with the trust company, and had since its organization, and the Breens had done their business with its predecessor. Was this money deposited there as a step in giving a preference, or to enable the trust company to obtain a banker's lien, or in the ordinary course of its business? The note to Darling was drawing interest, but, so far as appears, as stated, the other indebtedness (outside of that of the trust company), was not. It may fairly be inferred that the furniture company anticipated that from its sales it would derive profits and, by borrowing money from time to time, as absolutely needed, be able to make payments on its debts to various firms and individuals and postpone final and full payment, and so eventually get out of debt. I find no substantial evidence of collusion with the trust company or with the petitioners in bankruptcy or either of them. There is no evidence that the Darling note was being pressed at all at this time. There is no substantial evidence that Darling had indicated a purpose to withdraw his support or credit. If so, it is not shown that the furniture company knew it, or changed its action be-

cause of that fact. The notes charged up to the account on the 15th day of December, 1904, were as follows: Note of $2,000, dated February 29, 1904; note of $1,000, dated March 16, 1904; note of $1,000, dated April 1, 1904; note of $2,000, dated October 15, 1904. The note of October 15, 1904, was due in four months, or about February 15, 1905. The others were demand notes or past due. At that time, December 15, 1904, the trust company held other notes, payable on demand, made by the furniture company, viz., note of February 2, 1904, for $1,000; note of February 9, 1904, for $1,000; note of February 26, 1904, for $1,500; and note of March 9, 1904, for $1,000. It is quite suspicious that the note of October 15, 1904, for $2,000, not due until February, 1905, was charged to the account with the other notes mentioned, December 15, 1904, and included in the payment of such notes by check made that or the next day. Was it hoped or anticipated that actual bankruptcy would be deferred until four months had elapsed? Why were not the notes due on demand to the amount stated charged up or paid by check?

I think it clear that the trust company knew of the fire, knew that the insurance money was coming in, knew there might be some question of the ability of the furniture company to continue business or meet its obligations, and desired to secure its pay from the money in bank before further complications arose. Careful banks and trust companies always should have these matters in mind. But, as before stated, prudence in financial affairs and an adherence to strict business principles on the part of such institutions is required and expected, and we do not justly infer from their exercise an intent to receive a preference or a knowledge or a suspicion even that a preference is intended. But under the stock corporation law the intent of the trust company is immaterial, provided the payment was made with intent on the part of the furniture company or its officers to give a preference to the trust company. To find an intent on the part of the furniture company or its officers to give a preference, I must find more than insolvency and a knowledge of that fact by it. It or its officers having to do with the payment must have known or expected it would have that effect. An intent to prefer, when a payment is made, in the sense of this law, cannot be attributed to every insolvent person doing business, but who expects and intends in good faith to continue business, make money, and pay all his debts and obligations, and who pays a debt that is due. However, when a debtor comes to paying to one particular creditor debts not due, in preference to paying those creditors whose demands are due, we have a different situation, and must have a satisfactory explanation of the transaction, or the intent to prefer will be necessarily inferred. Have this trust company, the defendant here, and the furniture company and its officers given such explanation? If it be true that, being hard pressed, it was desired to save paying interest, cut down expenses or outgoes, and that this was the sole object of paying this note before due, and that is the only explanation given, then an intent to prefer the trust company should not be inferred. The furniture company was owing for merchandise about $4,000, Breen and Shaver notes, aside from Darling note of $7,000 or over, $1,600, other

accounts about $13,000, in addition to its indebtedness to the trust company. The evidence is scant and unsatisfactory as to what passed between the furniture company and the trust company just before and which brought about this payment. December 10, 1904, there was a meeting of the directors of the furniture company, and within a week thereafter its officers had checked out of the insurance to themselves some $1,800, or more. If they were intent on saving interest charges and maintaining the credit of the company, why was it that they paid themselves and the trust company alone?

During the summer and fall of 1904 the bank account of the furniture company was frequently overdrawn. After December 10th, the furniture company purchased some $8,000 worth of new goods on credit. While between December 6, 1904, and January 27, 1905, the company received and deposited some $20,050, it paid to Citizens' Trust Company, defendant, $12,321.35, paying it in full, to J. E. Davis, an agent of the company, some $685, and to the Breens, or concerns with which they were connected, some $3,000, or thereabouts, and to Talbot, the newly elected vice president, about $75. I think some $66 was on deposit when the end came. I do not find any evidence that when paying up the trust company any arrangement was made or attempted to be made for further credit or a renewal of credit when necessary. To my mind this is very suspicious. It is evident that the officers of the furniture company, in paying themselves and the trust company as they did, knew that the effect was to prefer themselves and the Citizens' Trust Company and precipitate failure. I am forced to the conclusion on all the evidence that the furniture company and its officers, knowing itself to be insolvent and on the eve of probable failure, and which it had in mind, made all the payments to the trust company, including that of December 15, 1904, with the intent of giving a preference to its creditor the Citizens' Trust Company of Utica, N. Y., over the other creditors of the corporation, and that such acts were in violation of section 48 of the corporation law of the state of New York and void.

But the trust company says that it had a banker's lien on the funds on deposit, and had the right to apply this money as it came in in payment of these demand notes. Express demand is not shown, but a check was promised, and in fact given, and as entered the furniture company was credited with payment of the notes made by checks on its account. These checks were honored, and the trust company took out the money (in effect) and transferred it to itself in payment of the notes. The transaction as a whole was a payment pure and simple made by the furniture company to the trust company. By the giving and acceptance of the checks, the one paid, and the other received, payment. It was not an adjustment of accounts or the making of a set-off. It was a transfer of property.

Again, all the deposits were made in due course of business in the usual manner and within four months of the filing of the petition in bankruptcy. Hence the lien, if any existed, was created within the four months preceding the filing of the petition in bankruptcy and at a time when the furniture company knew it was insolvent, and the deposits were accompanied with an intent on the part of the furniture

company and its officers to use them in making preferential payments, paying the trust company to the exclusion of other creditors. Subdivision "e" of section 67 of the bankruptcy act provides as follows:

"(e) That all conveyances, transfers, assignments, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned, or incumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. And all conveyances, transfers, or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the state, territory, or district in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

If the furniture company in due course of business had deposited this money with the trust company, and it or any part of it had remained there, the simple relation of debtor and creditor would have arisen, and, in the absence of fraud or collusion or intent to give and receive a preference, there would have been mutual demands which could have been set off, the one against the other, even though the deposits were made within the four months preceding the filing of the petition. New York County National Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380, 11 Am. Bankr. Rep. 42. But such is not this case. The furniture company checked out the money, all of it so far as involved here, and by checks on the account transferred it to the trust company as a payment of notes with intent to prefer and it was accepted as payment of such notes.

I cannot assent to the proposition that the trust company had a strict lien on the deposit, or any part of it, for the payment of the notes or any of them when the transaction of December 15, 1904, took place, except, possibly, so far as demand of payment on demand notes had been made. There was no lien on the deposit so far as the note of $2,000, not due until February, 1905, was concerned. Jordan v. National Shoe & Leather Bank, 74 N. Y. 467, 473, 30 Am. Rep. 319; Pearsall, as Trustee, v. Nassau Nat. Bank, 74 App. Div. 89, 77 N. Y. Supp. 11.

In Jordan v. National Shoe & Leather Bank, 74 N. Y., at pages 472, 473 (30 Am. Rep. 319) the court says:

"The defendant further contends that it had, and continues to have, a banker's lien on the balance of deposit sued for. There is spoken of in the books what is termed a banker's lien, but it is not a right to retain the balance of a customer's deposit, to pay or apply upon an indebtedness of his to the bank, not yet matured. The passage quoted by the defendant from Morse

on Banks: 'The rule may be, broadly stated, that the bank has a general lien on all moneys and funds of a depositor in its possession, for the balance of the general account'—is too broadly stated, and needs the limitation that the balance of that account must be then due and payable. A lien is a right of one to retain property in his possession belonging to another, until certain demands of him in possession are satisfied. Hammonds v. Barclay, 2 East, 227–235. But mere possession does not give the right. It must arise from contract or operation of law. There was no contract for a lien, in this case. Nor did the law operate to give one. It would be in complete hostility to the whole purport and contemplation of the contract of discount. The purpose, existing and understood by the parties in that act, is that the customer of the bank may draw out at his pleasure the avails of the discount. After the paper discounted falls due and payable and remains unpaid, unless other rights have intervened, the bank may hold a balance of deposits and apply it towards the payment of the paper; but these deposits in a bank create between it and the depositor the relation of debtor and creditor. Commercial Bk. of Albany v. Hughes, 17 Wend. (N. Y.) 100; Ætna National Bk. v. Fourth National Bk., 46 N. Y. 82, 7 Am. Rep. 314. Now a debtor in one sum has no lien upon it in his hands for the payment of a debt owned by him, which has not yet matured; nor has a bank, more than any other debtor. Both hold, as debtors, the moneys of their creditors, and may set up no claim to them not given by the law of set-off, counterclaim, recoupment, or kindred rules. Beckwith v. Union Bank, 3 Sandf. (N. Y.) 604, affirmed 9 N. Y. 211; Giles v. Perkins, 9 East, 37."

What were and what are the rights of the parties under the facts of this case as to the demand notes? They were due on demand, and I find that prior to December 15th demand had been made for payment of the demand notes included in the payment of that date. The trust company had been promised a check, presumably in payment of same, and this imports a demand that such notes be paid. Assuming this, if not paid, the bank had the right, acting in good faith, and not seeking or intending a preference to charge them to the account, which it did, but the promised check coming in that evening or the next day, it treated the transaction as a payment, and so accepted the check of the furniture company. In giving the check, in making this payment the furniture company intended to prefer the trust company in violation of the stock corporation law of the state of New York and violated such law. The trust company had no intent to accept a preference and no reason to believe a preference, in the sense of the statutes, was intended. Should I find, or can I find, that the payment of the demand notes made December 15th was in satisfaction of the lien, if any? By receiving the check, did the trust company waive its lien, if any, and accept payment in due course? I cannot doubt that the trust company, after demand of payment of the demand notes, so far as demand was made, had the right to retain the deposit so far as sufficient to extinguish them. But did it do this? It accepted the check and charged that to the account. The drawing and delivery of the check was with intent on the part of the furniture company to prefer the trust company over its other creditors, and that act is declared void by the stock corporation law; but the trust company then had and still has the money and, in fact, has never parted with it. It had the right to retain it notwithstanding the unlawful intent of the furniture company or its officers. Having demanded payment of those demand notes, paid December 15, 1904, it had the right to charge them to the account, and to that extent appropriate so much of the deposit as was necessary

to their payment. This it did in fact. When the check came in, it treated that as payment, and so applied it. Has the trust company by that act lost its right to retain that money so far as the demand notes paid December 15, 1904, are concerned? Assuming that the payment, as such, by the check, was void under the stock corporation law, where are the parties left December 16, 1904? The trust company, having demanded payment, has taken the money, applied it to the payment of certain demand notes, as it had the right to do, including a note of $2,-000 not due and to the payment of which it had no right to apply any part of the deposit at that time. As to the other demand notes, paid thereafter, what was the condition and rights of the parties when the petition was filed and up to the time the adjudication was made? If no checks had been given, if no demand of payment had been made, and all the money had remained with the trust company to the credit of the furniture company, the trust company could have retained of the deposit a sufficient sum to pay all the notes due or not due as against the trustee in bankruptcy. Matter of Phillip Semmer Glass Co., Lim., 11 Am. Bankr. Rep. 665; N. Y. Co. Nat. Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380.

The relation of the parties would have been this: The trust company was owing to the furniture company over $12,000, balance of deposits to its credit, and the furniture company was owing the trust company on notes, some due and some not due, a somewhat smaller sum in the aggregate. The right of set-off existed, and the trust company could have successfully resisted any proceeding to compel it to pay to the trustee any sum except the excess over the amount of such notes. Did it lose that right by in good faith accepting payment from the furniture company prior to the filing of the petition in bankruptcy; the payment of such notes having been made by the furniture company with intent to prefer? Assume that the payments, and all of them, were void, as made in violation of the stock corporation law, does it follow that this trustee in bankruptcy can recover the amounts so paid when the further fact appears, if it be a fact, that, had the payments not been made, the trust company could not hold all the money paid to it by check and sought to be recovered? Can we impose that penalty in the trust company on the ground the furniture company and its officers violated the stock corporation law in making the payments? In short, declaring the payments made by the furniture company to the trust company, from and including December 15, 1904, up to the date of the filing of the petition in bankruptcy, void, can we deprive the trust company of the right of offset it had when the checks were drawn as to the demand notes payment of which had been demanded, and would have had when the petition was filed as to the others if the payments had not been made?

I do not think the trust company had, strictly speaking, a lien on the deposits. It did have the right to retain so much of the deposits as was necessary to pay any note or notes made by the furniture company and discounted by it with the trust company and which had come due. The trust company had the right, in the absence of agreement to the contrary, to charge such notes to the account, and I do not think this

right was in any way destroyed by the giving of the check. Subsequently to the giving of the check, December 15th or 16th, for the $6,-070, deposits made with intent on the part of the depositor, furniture company, to apply them in making preferential payments, stand on a different footing. While deposited in the regular course of business with its banker by the furniture company, they were affected by the unlawful intent, and, had they not been applied in execution of that intent to the payment of the $2,000 note not due and the other demand notes, can we say the deposits would have remained with the trust company so as to have been subject to the right of offset at the time the petition was filed and the adjudication made? Would they not have been applied to the payment of other debts owing to other creditors? Can we construct a right of set-off or lien so called in favor of the trust company that never came into existence? This money did not remain on deposit with the trust company subject to the check of the furniture company until bankruptcy proceedings were instituted. It was not paid over from time to time after December 15, 1904, on the demand notes as demand of payment was made, but voluntarily and pursuant to an intent to make preferential payments, and such payments were void. What the situation would have been January 27, 1905, or February 10, 1905, had not these payments been made is conjectural, and it seems to me that, unless the law says a banker may charge the note of a customer due on demand to his account without any demand other than so charging it—that is, without making demand of payment of the maker—no right of set-off as to the $2,000 note or the other demand notes, those paid subsequently to December 15, 1904, ever arose. The money was paid over to the trust company from time to time in pursuance of an illegal intent as a preference and on demand notes payment of which had not been demanded and in violation of the stock corporation law. The money paid on the $2,000 note coming due in February, 1905, never became subject to set-off or any banker's lien. I can find no evidence of a demand as to the demand notes paid after December 16, 1904, and I find no authority, and am pointed to none, holding that a bank may charge a demand note to the account of the maker prior to his failure or the filing of a petition in bankruptcy against him, without first making a demand. The note is payable on demand made by the bank. Has the maker a right to a demand before it is charged to his account? His deposit account is subject to his check and he may have given checks for the whole amount of it to other parties relying on that fact. If the bank or trust company may charge up the demand note or notes without demand or notice, the checks would be dishonored, and the depositor's credit shaken, and perhaps destroyed. If demand is made, the maker of the note may care for it in other ways, and it seems to me that he ought to have the opportunity so to do. Demand, in such cases, is not a useless formality. It is settled that demand of payment of a note payable on demand is not necessary before suit brought, as suit brought is a sufficient demand. Haxtum v. Bishop, 3 Wend. (N. Y.) 13. But a deposit in a bank is not due and cannot be made the subject of set-off against a note held by the bank until demand is made, although it is presently

payable on demand. Munger v. Albany City National Bank et al., 85 N. Y. 580, 587; Howell v. Adams, 68 N. Y. 314. So of a deposit with a private individual. Boughton v. Flint, 74 N. Y. 476. On the other hand, the statute of limitations begins to run as against a note payable on demand from its date, whether demand is made or not, even if it is drawn with interest. Wenman v. Mohawk Ins. Co., 13 Wend. (N. Y.) 267, 28 Am. Dec. 464; Howland v. Edmonds, 24 N. Y. 307; Wheeler v. Warner, 47 N. Y. 519, 7 Am. Rep. 478; De Lavallette v. Wendt, 75 N. Y. 579, 31 Am. Rep. 494. And while one who indorses a nonnegotiable promissory note payable on demand does not in the commercial sense become an indorser with the rights and liabilities of an indorser, he may be held thereon as maker or guarantor, and the statute of limitations runs in his favor from the date of the instrument. Cottle v. Marine Bank, 166 N. Y. 53, 58, 59 N. E. 736; Wheeler v. Warner, 47 N. Y. 519, 7 Am. Rep. 478; McMullen v. Rafferty, 89 N. Y. 456, 458. In this case, Judge Earl said (page 459 of 89 N. Y.):

"The word 'demand' is not treated as part of the contract, but is used to show that the debt is due."

In Cottle v. Marine Bank, supra, the court said:

"As between maker and holder a promissory note payable on demand is due forthwith, * * * and therefore a demand with tender of the note of the maker is not a condition precedent to the maturity of the cause of action."

If this be so, then these demand notes were due and payable when the checks were given in payment without demand; and, if due and payable, the right of set-off existed, and, it would seem, it must follow that the trust company had the right to receive payment and had at the times of payment a sort of lien upon the deposit. In short, the deposits were actually applied by the depositor and received by the holder of the notes then due and payable in satisfaction of the notes, and, if due and payable, the trust company had the right to receive and retain the money turned over to it. It had the right to charge up these demand notes for the reason they were due. See cases cited. They did not, as the money was turned over to them voluntarily. Its right of set-off then existing is not forfeited for the reason the furniture company turned it over. It would seem that this right of set-off has continued and still exists. Why not? As stated, can we impose a penalty on the trust company for the reason the furniture company had an intent to prefer not known to or shared or participated in by the trust company? At all times after December 15, 1904, on this theory, the trust company had the right to decline to pay checks of the furniture company, except for the balance of the deposits over and above the amount of the demand notes, and could have defended any suit brought by it and set off such demand notes against the deposits, even if no demand had been made.

The money is in the possession of the trust company. It has been there at all times, since the deposits were made. If the furniture company could not have checked it out against the objection of the trust company or recovered it in a direct suit, how can the trustee of the bankrupt furniture company now recover it? His title and right to it

is no greater than was that of the furniture company. True, the payments made by the furniture company were void under the stock corporation law; but so declaring them leaves the money in the hands of the trust company as balance of deposits, and it may set up any defense to the recovery of the money from it by the trustee that it had against the furniture company. If the furniture company had taken the money from its safe or till or some other bank, and paid it to the trust company in satisfaction of the notes with intent to prefer the trust company, the case would be different, and the trustee could recover. As the case stands, he may recover the $2,000 paid on the note that was coming due in February, 1905. As to that there was no right of set-off, no lien when it was paid, and it was not a deposit when bankruptcy proceedings were instituted. That act did not operate to give to the trust company a right to set off the $2,000 note against a cause of action the bankruptcy act gives to the trustee to recover the amount of the illegal payment made on that note, not due December 14th or 15th when paid, and paid in violation of the stock corporation law. and as to which note there was no right to a set-off against deposits until bankruptcy intervened. When that right came into existence, there was no deposit. The money had been drawn out with intent to use it to prefer, and paid as a preference within the stock corporation law, and was illegally in the hands of the trust company, which had no lien on or right to it when received.

And I do not think that subdivision "e" of section 67 is so broad, and to be construed so strictly, as to cut off the defense of so-called banker's lien, or right of set-off, existing when the money was paid over on the demand notes. True, the section says:

"And such property shall pass to the trustee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt."

But this does not, in my judgment, operate to destroy the rights of the trust company which received the money to retain same, which right existed prior to and at the time of the illegal payments. But, it is contended that as the lien, or right of set-off, arose and was created, or sprung into existence, within the four months preceding the filing of the petition in bankruptcy, at a time when the furniture company was insolvent to its knowledge and that of its officers, and the money was deposited with intent on the part of such officers to make preferential payments therewith to the trust company, that such lien or right of set-off falls, and the trustee may recover the whole amount claimed. I have found that the trust company and its officers had no intent to demand or receive a preference, that they did not know the furniture company was insolvent, and that they did not have reasonable cause to believe that it was intended to give a preference either by making the deposit or paying over the money on the demand notes or in payment of same. There can be no recovery under section 60 of the bankruptcy act. This lien, or right of set-off, so called, was neither created by or obtained in or pursuant to any suit or proceeding at law or in equity, nor obtained through legal proceedings. The lien, if a lien, does not fall under the provisions of subdivisions "e" or "f" of section 67 of the bankruptcy act. The money was deposited in the bank with an ex-

isting purpose to make preferential payments therewith (preferential under the stock corporation law), but in this intent the trust company did not share. In fact, I am of the opinion that the right of a bank to set off the matured notes of a customer or depositor against his deposits, assuming such deposits are not made for and devoted to a special purpose to the knowledge of the bank, is not a lien on the deposits in the sense of the bankruptcy act. It is a right of set-off, a right to apply the one, the deposit, to the extinguishment of the other, the overdue notes.

However, be this as it may, I am of opinion, on the whole case, that the plaintiff may and should recover the whole amount paid on the note of $2,000 coming due in February, 1905, with interest from the time of demand by the trustee, but that he cannot recover the amount of the other payments, those made on the demand notes.

There will be a judgment accordingly.