## UTAH-IDAHO LIVE STOCK LOAN CO. v. BLACKFOOT CITY BANK.

(District Court, D. Idaho, E. D. April 2, 1921.)

1. **Chattel mortgages ☞227—In absence of agreement therefor, mortgagee consenting to sale of property has no lien on proceeds.**

   The holder of a chattel mortgage on cattle, by consenting to their sale by the mortgagor, waived its lien on the cattle, and in the absence of contract therefor succeeded to no lien on the proceeds.

2. **Contracts ☞187(1)—Agreement to lend money to debtor to pay his debt does not give creditor right of action to recover the money.**

   An agreement by defendant bank to lend money to a third party with which to pay a debt to plaintiff when due does not give plaintiff a right of action at law against defendant to recover the money.

At Law. Action by the Utah-Idaho Live Stock Loan Company against the Blackfoot City Bank. Judgment for defendant.

Gustin, Gillette & Brayton, of Salt Lake City, Utah, and J. M. Stevens, of Pocatello, Idaho, for plaintiff.

Budge & Merrill, of Pocatello, Idaho, and John W. Jones, of Blackfoot, Idaho, for defendant.

DIETRICH, District Judge. In the original complaint the plaintiff alleged:

"That on or about September 20, 1919, at Blackfoot, Bingham county, in the state of Idaho, the defendant above named received from one J. C. Robison the sum of $11,850, the property of plaintiff herein, to and for the use and benefit of plaintiff herein, which said sum defendant contracted and agreed and became and was liable to pay said plaintiff at Blackfoot, Idaho, on November 26, 1919."

A demurrer for uncertainty having been sustained to this paragraph, the plaintiff amended by inserting, between the words "defendant" and "contracted," the phrase "thereby impliedly," thus defining the cause of action as one for money had and received. Thereafter, responding to the defendant's demand, it filed a bill of particulars, in which apparently the same theory is retained, although the language employed is perhaps susceptible to the same objection for uncertainty

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that was raised against the original complaint. At the opening of the trial it sought and was granted leave to amend the amended complaint by substituting for the amendatory words "thereby impliedly" this clause:

"On September 29, 1919, at the J. C. Robison ranch, near Lake, Fremont county, Idaho, expressly by an oral contract."

So that the trial was had upon the specific claim that the defendant—

"received from one J. C. Robison the sum of $11,850, the property of plaintiff herein, to and for the use and benefit of plaintiff herein, which said sum defendant, on September 29, 1919, at the J. C. Robison ranch, near Lake, Fremont county, Idaho, expressly by an oral contract contracted and agreed and became and was liable to pay to the said plaintiff, at Blackfoot, Idaho, on November 26, 1919."

In view of the discussion following which this amendment was allowed at so late a date, it is doubted whether in pleading the express oral agreement plaintiff intended anything more than an explanation of how it happened that the implied obligation of the defendant to pay over to the plaintiff the money received for its use and benefit was to mature on a day certain, for it is to be observed that as amended the charge still is that the specific funds were the plaintiff's property and were received by the defendant for its use and benefit.

It appears from the evidence that the $11,850 constituted the proceeds of a sale of a part of the cattle covered by a chattel mortgage given by Robison to the plaintiff, and that the sale of these cattle was made by Robison with the plaintiff's consent, on or about the 20th of September, 1919. There is no evidence upon the question of what understanding, if any, there was, at the time such consent was given, touching the disposition or application of the proceeds of the sale. It further appears that Robison was indebted to the bank upon several promissory notes, some of which were past due, and also had a checking account. The draft he received in payment for the cattle he sent to the defendant, with instructions to deposit it to the credit of his account, and the check was deposited accordingly. This was upon September 22, 1919. Three days later one Rice, plaintiff's field agent or inspector, called at the bank, and in the course of the conversation with the cashier, Anderson, suggested to him that the money was probably the proceeds of the mortgaged cattle. The next morning, after advising with the bank's attorney, Anderson, without the knowledge of Rice, directed his assistants in the bank to cancel Robison's overdue notes and to charge the amount thereof against his account —in effect to apply approximately $7,000 of the funds thus received from Robison to the payment of his notes.

At the time this action was taken the cashier had reason to believe, and, though without definite information, he did believe, that the funds were part of the proceeds of the sale of the mortgaged cattle. After giving this instruction he accompanied Rice to Robison's ranch, where, in conversation with Robison, he learned definitely of the source of the funds. The mortgage would not become due for about 60 days, and inasmuch as it did not bear interest until maturity, after some

discussion between Anderson, Robison, and Rice, it appears that a general understanding was reached that the money should be used in the payment of Robison's notes at the bank, and when the mortgage should become due, on November 26th, the bank would lend to Robison an equivalent amount, to enable him to make payment to the plaintiff. Anderson thereupon returned home, and in due time, as the other Robison notes matured, the balance of the deposit was applied to their payment, and they were canceled and surrendered.

Shortly prior to November 26th, Robison called at the bank on his way to Salt Lake City, where plaintiff maintained its home office, and asked for the money to meet the maturing mortgage obligation. It is unnecessary to recount the details of his interview with Anderson, or of an ensuing conference between them and certain members of the defendant's board of directors. It is sufficient to say that the bank declined to make the loan. Robison went on to Salt Lake City, and shortly after he arrived the plaintiff wrote a letter to the defendant as follows:

"Salt Lake City, November 26, 1919.

"Blackfoot City Bank, Blackfoot, Idaho—Gentlemen: At the request of Mr. John C. Robison, of Lake, Idaho, we are drawing on you to-day for $12,000, representing deposits made in your bank during the past 60 days by Mr. Robison, from the proceeds of cattle sold to Cudahy Packing Company of Salt Lake City, and covered by mortgage to this company, and which is in accordance with agreement made by your cashier, Mr. Anderson, and our representative, Mr. I. E. Rice, and Mr. Robison. Please take up the draft promptly and oblige.

"Very truly yours,    F. W. Butler, Secretary."

In reply the bank denied that it had made any unconditional promise to loan Robison the money; some other correspondence ensued which is of little importance. This statement of the issues presented by the plaintiff's pleading and of the salient facts will sufficiently disclose the reasons for the conclusions I have reached, which are now to be stated.

[1] The contention that the $11,850 deposited in the defendant's bank was "the property" of the plaintiff is not sustained by the evidence. Nor is there any evidence to support the proposition that it was deposited by Robison for the use and benefit of the plaintiff. The theory of the pleader seems to have been that upon the sale of the mortgaged cattle the proceeds of the sale as a matter of course and by operation of law became the plaintiff's property; but it had only a lien upon the mortgaged property, and, in the most favorable view, its interest in the proceeds of the sale could be no greater. Furthermore, it assented to the sale, and of course thus waived its lien upon the cattle. If it acquired an interest in the proceeds, how and by virtue of what agreement or understanding or principle of law? The conditions upon which it consented to the sale are peculiarly within its knowledge, but for some unexplained reason it has chosen to withhold them from the record. It has not attempted either to plead or to prove any facts upon which to rest a finding that it had any right in or lien upon the deposit, other than the mere fact that the fund represented the proceeds of mortgaged property, which, however, it

had released from the lien of its mortgage. But the mere fact of the mortgage does not necessarily imply ownership of or an interest in the proceeds of the sale of the mortgaged property, especially in a case where the sale is consented to by the mortgagee. Durkee v. National Bank, 102 Fed. 845, 42 C. C. A. 674; New York County National Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380; Smith v. Bank, 99 Iowa, 282, 61 N. W. 378; also 68 N. W. 690; Knollin v. Jones, 7 Idaho, 466, 63 Pac. 638; Fairweather v. Nelson, 76 Minn. 510, 79 N. W. 506; Stinson v. Sneed (Tex. Civ. App.) 163 S. W. 989; Maier v. Freeman, 112 Cal. 8, 44 Pac. 357, 53 Am. St. Rep. 151; Carr v. Brawley, 34 Okl. 500, 125 Pac. 1131, 43 L. R. A. (N. S.) 302; Waters v. Cass County Bank, 65 Iowa, 234, 21 N. W. 582; Simon-Cassady & Co. v. Bank, 159 Iowa, 149, 140 N. W. 401; Rawlins County State Bank v. Walters, 92 Kan. 391, 140 Pac. 864; Minneapolis Threshing Machine Co. v. Calhoun, 37 S. D. 542, 159 N. W. 127; Hoyt v. Clemans, 167 Iowa, 330, 149 N. W. 442, L. R. A. 1915C, 166; Irish v. Citizens' Trust Co. (D. C.) 163 Fed. 880; Aurora National Bank v. Dihls, 18 Ind. App. 319, 48 N. E. 19; People's Bank & Trust Co. v. Tufts, 59 N. J. Law, 380, 35 Atl. 792.

It is not intended to suggest that the plaintiff could not have made an agreement with Robison that he should receive the proceeds of the sale and hold the same for plaintiff, or that such an agreement would not have been valid against attaching creditors, or against the defendant bank, with the notice it had before it applied the credit to the payment of the notes. But any finding that consent to the sale was coupled with a condition that the money should become the plaintiff's property, or should be subject to the lien of its mortgage, and that Robison was to be its agent or trustee to receive and pay the money over to the plaintiff, would have to rest upon nothing more substantial than surmise and conjecture. It follows that the plaintiff cannot recover upon the theory disclosed by the complaint as it stood at the opening of the trial, namely, that the fund was its property, and was received by the defendant for its use and benefit, with the obligation thus implied to pay it over to the owner.

[2] As already suggested, it would seem that the "express oral" agreement pleaded in the amendment was intended to fix the time for discharging the pre-existing implied obligation, and not to create new substantive rights or obligations, and in that view, of course, the oral agreement could be of no avail to the plaintiff, for it has failed to show the substantive right to which the oral agreement is supposed to have been a mere incident. But, if we accept the amendment as an allegation of a distinct, substantive contract, complete in itself, the plaintiff must still fail, for two reasons:

So construed, the pleading is of a straight, unconditional obligation to pay to the plaintiff a certain amount of money; but this view the evidence fails to support. The bank assumed no obligation to make any payment to the plaintiff. The oral understanding was that when the mortgage matured the bank would loan the money to Robison, and such was undoubtedly Robison's understanding, for otherwise he would not have stopped at the bank on his way to Salt Lake City,

and demanded the money. And such also seems to have been the view of the plaintiff, for after Robison got to· Salt Lake City—not before—it wrote to the bank and explained that it was drawing "at the request" of Robison. When it is borne in mind that this is an action at law, and not a suit in equity, the· variance cannot be said to be merely technical. To grant the plaintiff the relief it seeks is in effect to require specific performance by the defendant of an agreement to which Robison as well as the plaintiff and the defendant were parties. While perhaps the condition was not expressed, it must have been understood that, if Robison got the money from the bank with which to pay the plaintiff, he would be required to obligate himself in some formal way to make repayment at some given time of the sum borrowed, together with interest. The enforcement of such requirement would be impossible in this action, for the reason that it is one at law, and besides he is not a party.

In the second place, if the oral agreement be deemed to be one made with Robison for the benefit of the plaintiff, what are its rights? It held a chattel mortgage to secure the payment of certain indebtedness owing to it from Robison. If this indebtedness has been fully paid, it has no footing upon which to require the bank now to make the loan to Robison. Its only interest was in having the mortgage debt paid; but it is not alleged, and so far as I now remember there is no proof, that any part of it remains unsatisfied. Even in an appropriate form of action, ordinarily a court of equity would not decree the specific performance of such an agreement, but would relegate the injured party to an action at law for damages. But the damage, if any, which the plaintiff has suffered, it neither alleged nor proves. It may be amply secured, or, as already suggested, it may have been fully paid.

It follows that the action must be dismissed, and such will be the judgment.